Kelly, C.J.
This case involves the Headlee Amendment[1] and is before this Court for the third time. Most of the legal issues have been resolved and appear in the discussion of facts and procedural history below. The issues remaining are (1) whether plaintiffs must introduce evidence of a specific, quantified increase in costs resulting from a violation of the Headlee Amendment provision prohibiting unfunded mandates to establish entitlement to a declaratory judgment and (2) whether plaintiffs’ suit has been “sustained” under Const 1963, art 9, § 32, enabling plaintiffs to recover attorney fees. We answer the first question in the negative and the *473 second question in the affirmative. Therefore, we affirm in part and reverse in part the judgment of the Court of Appeals.
I. FACTS AND PROCEDURAL HISTORY
The Headlee Amendment is an initiative passed by Michigan voters in 1978. Among its provisions, Headlee added the following section to the Michigan Constitution:
The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs. The provision of this section shall not apply to costs incurred pursuant to Article VI, Section 18.[2]
Shortly after the Headlee Amendment was ratified, the Legislature enacted legislation designed to implement it.[3]
The state has required Michigan public school districts to report certain information, including pupil counts and financial data, for many years. However, in 2000, the Governor issued Executive Order No. 2000-9, which established the Center for Educational Performance and Information (CEPI). EO 2000-9 became effective September 28, 2000. Along with later legislation, it required plaintiff school districts to actively participate in collecting, maintaining, and reporting various types of data. The state began warehousing this data in several discrete databases, the single record *474 student database (SRSD), the financial information database (FID), the registry of educational personnel (REP), and the school infrastructure database (SID). Under MCL 388.1752,[4] in order to receive yearly funding, school districts must furnish all data that the state considers necessary for the administration of the State School Aid Act.[5]
The information collected by the CEPI facilitates compliance with state reporting requirements and requirements imposed by the federal government.[6] In order to meet some of these requirements, the state must report data on a student-by-student, teacher-by-teacher, or building-by-building basis. This enables the state to receive federal funds under the No Child Left Behind Act.[7]
On November 15, 2000, plaintiffs filed the present suit in the Court of Appeals. Plaintiffs are 456 Michigan public school districts and a taxpayer from each district.[8] They alleged that the recordkeeping and report *475 ing requirements in EO 2000-9 and MCL 388.1752 constituted an unfunded mandate and violated the provision of Const 1963, art 9, § 29 prohibiting unfunded mandates (the POUM provision). The parties stipulated midtrial that the database submissions listed in EO 2000-9 and the later legislation were not required until two years after the effective date of the executive order.
In its first adjudication of plaintiffs’ claims, the Court of Appeals concluded that the claims raised or that could have been raised in earlier suits were barred by res judicata. It also held that plaintiffs’ other claims were barred because of releases the parties had executed or because the activities complained of did not implicate the POUM provision. The Court granted summary disposition to defendants on all claims.[9]
We granted leave to appeal and reversed in part the judgment of the Court of Appeals.[10] A majority of this Court agreed with the Court of Appeals that most of plaintiffs’ claims were barred by res judicata or release or did not implicate the Headlee Amendment’s POUM provision. However, we concluded that plaintiffs had sufficiently stated a claim on which relief could be granted in their recordkeeping claim. We remanded the case to the Court of Appeals for further proceedings on that claim.
On remand, the Court of Appeals concluded that plaintiffs had not provided documentary support for their claim that the CEPI requirements were an unfunded mandate. Consequently, it again granted summary disposition to defendants.* [11] Plaintiffs again ap *476 pealed, and we vacated the Court of Appeals’ judgment and again remanded to that Court.[12] We directed the Court of Appeals to reevaluate plaintiffs’ claim “under both the ‘new activity or service’ and the ‘increase in the [level] of any activity or service’ prongs of Const 1963, art 9, § 29’s prohibition of unfunded mandates . . . .”[13]
On second remand, the Court of Appeals appointed a special master to conduct fact-finding. The special master was instructed to determine
whether the record-keeping obligations imposed on plaintiff school districts by MCL 388.1752 and Executive Order 2000-9 constitute either a new activity or service or an increase in the level of a state-mandated activity or service within the meaning of Mich Const of 1963, art 9, § 29’s prohibition of unfunded mandates.[14]
The special master heard testimony in this case in 2007. On January 27, 2008, she filed an opinion, concluding that the recordkeeping requirements did present an increase in the level of activity required of plaintiff school districts beyond what was previously required. Therefore, she concluded that the requirements violated the POUM provision.
The Court of Appeals adopted the conclusions of law and factual findings of the special master with some modifications and entered a declaratory judgment in favor of plaintiffs.[15] The Court rejected plaintiffs’ request for attorney fees under Const 1963, art 9, § 32, concluding that this suit “cannot be characterized as *477 having been ‘sustained’ within the meaning of § 32.”[16] Both plaintiffs and defendants appealed, and we granted both applications for leave to appeal in part.[17]
II. STANDARD of review
Questions involving the proper interpretation of a constitutional provision receive review de novo.[18] The proper interpretation and application of a statute is also a question of law that we consider de novo.[19]
III. ANALYSIS
We have established that “[t]he primary and fundamental rule of constitutional or statutory construction is that the Court’s duty is to ascertain the purpose and intent as expressed in the constitutional or legislative provision in question.”[20] When interpreting constitutional provisions, we are mindful that the interpretation given the provision should be “ ‘the sense most obvious to the common understanding’ ” and one that “ ‘reasonable minds, the great mass of the people themselves, would give it.’ ”[21] “[T]he intent to be arrived at is *478 that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed . . . .”[22]
Article 9, § 29 of the Michigan Constitution prohibits the state from placing two related but independent burdens on local governmental entities. First, the state may not reduce the state-financed proportion of the necessary costs of any existing activity or service that state law requires of local units of government. Second, no state agency, including the Legislature, may require a new activity or service by a local unit of government. It may not require an increase in the level of an activity or service beyond that required by existing law. If it imposes such a requirement, the state must appropriate and disburse funding to pay the local unit of government for any necessary increased costs. This Court has described the first requirement as the “maintenance of support” (MOS) provision and the second requirement as the “prohibition on unfunded mandates” or POUM provision.[23] These two requirements address different situations and involve different harms.[24] Therefore, the analysis applicable to each differs.[25] Only the POUM provision is applicable in this case.
*479 A. HEADLEE VIOLATIONS
A majority of this Court has held that to establish a violation of the POUM provision, a plaintiff must show that “the state-mandated local activity was originated without sufficient state funding after the Headlee Amendment was adopted or, if properly funded initially, that the mandated local role was increased by the state without state funding for the necessary increased costs.”[26] Also, as the dissent correctly notes, the state “need only fund mandates that will result in ‘necessary increased costs.’ ”[27]
Const 1963, art 9, § 29 is a clear prohibition of state action: before the state imposes a new or increased activity or service on a local unit of government, it must appropriate funds to cover any necessary increased costs. Left unanswered is who bears the burden of showing that the new or increased activity or service resulted in necessary increased costs.[28]
*480 We conclude that to establish a violation of the POUM provision, a plaintiff must show that the state required a new activity or service or an increase in the level of activities or services. If no state appropriation was made to cover the increased burden on local government, the plaintiff need not show the amount of increased costs. It is then the state’s burden to demonstrate that no state funding was required because the requirement did not actually increase costs or the increased costs were not necessary.[29]
In this case we agree with the Court of Appeals that plaintiffs established a violation of the POUM provision. The recordkeeping requirements of EO 2000-9 and the later legislation mandate more activities than the law required before, which Const 1963, art 9, § 29 forbids, and the state did not fund them,[30] as the POUM provision requires.[31] Moreover, defendants did not show *481 that plaintiff school districts’ costs were not increased or that such costs were not “necessary” under MCL 21.233(6). Therefore, we affirm the Court of Appeals’ judgment granting plaintiffs a declaratory judgment.
1. INCREASE IN THE LEVEL OF ANY ACTIVITY OR SERVICE
The special master concluded that, beginning in 2002, the recordkeeping requirements imposed for the CEPI constituted an increase in the level of activity beyond that previously required. It is undisputed that the state required plaintiff school districts to report some student information and financial data before the CEPI was established. Therefore, the pertinent testimony on this issue involved the changes in the volume and specificity of information that the state required to be reported after implementation of the CEPI requirements.
Defendants assert that Const 1963, art 9, § 29 was not violated because the recordkeeping requirements did not constitute a state-mandated increase in the level of activities or services. However, the testimony adduced before the special master belies this argument. Ample testimony established that both the amount of information collected and the manner in which the information had to be reported after CEPI was significantly greater and more intensive than before.
For example, Deborah Piesz, the finance manager at the Birmingham Public Schools, testified that the reporting required for the FID was much more involved than it had been in the past. She stated further that the district was now required to “keep much more detailed information” than previously. Both Ms. Piesz and *482 Daniel Behm, the superintendent of the Forest Hills Public Schools, testified that the school district collected the additional information solely to comply with the heightened state requirements imposed by the CEPI. They also stated that the districts would not have collected the information for their own purposes. Testimony from other personnel employed in the nine representative districts was substantially similar to that of Mr. Behm and Ms. Piesz.
Collecting “a large amount of data” or “much more detailed information” than was previously required constitutes an increase in the level of an activity under Const 1963, art 9, § 29; namely, the state-mandated collection, maintenance, and reporting of data to the state. Defendants identify no evidence that rebuts this simple fact or undercuts the veracity of any of the testimony taken before the special master.
2. NO STATE APPROPRIATION
The evidence taken before the special master demonstrated that no state appropriation was made to fund plaintiff school districts’ implementation of the reporting requirements of the REIJ SID, or FID. Nor was any appropriation made to provide for the school districts’ ongoing duty to comply with the reporting requirements for all four databases. Rather, the districts were expected to take monies from discretionary funds to cover the costs associated with their data-collection and reporting obligations. The evidence established that each school district did that.
Hence, plaintiffs met their initial burden of showing a POUM violation by demonstrating an increase in the level of recordkeeping required of the school districts. Moreover, they demonstrated that the state appropriated no funds to cover the implementation of these *483 increased requirements. Thus, plaintiffs are entitled to a declaratory judgment unless defendants demonstrate that plaintiff school districts’ costs were not increased as a result of the requirements or that the costs incurred were not necessary.
3. INCREASED COSTS
The next question is whether the increase in the recordkeeping requirements resulted in increased costs to plaintiff school districts. Again, a vast amount of unchallenged testimony in the record establishes that plaintiff school districts incurred increased costs as a result of the CEPI requirements. These increased costs involved hiring additional personnel, reassigning existing staff to help meet the CEPI requirements, and purchasing computer software to enable compliance with them.
Testimony from administrative personnel working for the representative school districts established that personnel were required to work overtime to comply with the CEPI requirements. One of them, Sandy Kopelman, a secretary in the Birmingham Public Schools, stated that she worked overtime specifically to comply with the CEPI’s additional reporting requirements. She stated that she had “never got overtime before.”
Randall Monday, an assistant superintendent for the Monroe Public Schools, claimed that since the implementation of the CEPI requirements, he had to take more time to meet with the principal of each school within his district. He stated that the meetings required additional time because he and the principals had to sort out distinctions between the information required for the CEPI and the district’s own reporting requirements. This diversion of manpower required so that the *484 school districts could comply with the CEPI requirements constituted increased costs to the districts.[32]
Mary Reynolds, the executive director of business services for the Farmington Public Schools, testified that her office lost staff after the CEPI requirements were implemented. Nevertheless, she testified that, because compliance with the CEPI requirements was state-mandated and needed for the district to receive other state funding, the district was forced to give *485 priority to that work. As a result, she testified, “there are many other things that don’t get done, don’t get accomplished.”
Therefore, the evidentiary record shows that the state forced plaintiff school districts to allocate staff time in order to comply with the CEPI requirements. The fact that MCL 388.1752 requires school districts to comply with the CEPI requirements to receive other funding further supports our conclusion. Defendants offered no evidence to rebut this conclusion.[33]
4. “NECESSARY” COSTS AND “NET COST”
Defendants claim that, even if the CEPI requirements mandated an increase in activities or services that increased plaintiff school districts’ costs, those costs are not necessary increased costs. Defendants assert that plaintiffs failed to demonstrate that any additional costs incurred to comply with the requirements met the definition of “necessary cost” under MCL 21.233(6) and were not de minimis under MCL 21.232(4).[34] Finally, defendants and the dissent argue *486 that plaintiffs cannot prevail because even if the school districts incurred necessary increased costs, they did not quantify the exact amount of those costs.
We reject defendants’ argument because it would hold plaintiffs to an evidentiary burden that they need not meet. The language of Const 1963, art 9, § 29 provides a clear limitation on state action: an increase in the level of any activity or service beyond that required by existing law must not be required by the Legislature or any state agency. The only exception is if the state appropriates and disburses funds adequate to pay for necessary increased costs.
Neither Const 1963, art 9, § 29 nor MCL 21.233 suggests that plaintiffs bear the burden of proving precisely how much the school districts’ costs increased *487 as a result of the mandate. In fact, the language of MCL 21.233 implies the opposite. That section defines “necessary cost” as the “net cost of an activity or service provided by a local unit of government.” The “net cost” is defined as “the actual cost to the state if the state were to provide the activity or service mandated as a state requirement....”
Nothing in the POUM provision expressly requires a plaintiff to establish that the increase in activities or services resulted in increased costs. Rather, a plaintiff need only establish that the state imposed on it a new or increased level of activity without providing any funding to pay for it. The burden then shifts to the state to show (1) that it is not required to pay for it because the new or increased level of activity did not result in increased costs or (2) that those costs were not “necessary” under MCL 21.233(6).
In evaluating whether the additional costs stemming from the increased level of activity were necessary, the question is this: Would there be a cost to the state if it, rather than the school districts, paid for the increased activity? MCL 21.232(4) defines a de minimis cost as a “net cost” to a local governmental unit resulting from a state requirement that is less than $300 a claim.
Notably, this $300 requirement has no temporal limitation. The special master specifically found that “it is clear that the increase in the shear [sic] amount of data initially overwhelmed the resources . . . .” It is implicit in this conclusion and supported by copious testimony, such as that discussed previously, that the additional costs incurred by each school district to comply with the CEPI requirements exceeded $300.[35] *488 Defendants cannot demonstrate any basis for concluding otherwise, nor did they offer evidence that the state’s actual costs, were it to provide the activity, would be lower than were the school districts’.
5. PROOF OF SPECIFIC INCREASED COSTS
Another necessary inquiry related to the preceding issue is whether plaintiffs must produce evidence of specific dollar-amount increases in the costs incurred in order to comply with the CEPI requirements. We conclude that, when no legislative appropriation was made, a plaintiff does not have the burden to make such a showing to establish entitlement to a declaratory judgment under the POUM provision. This conclusion is axiomatic from the language of Const 1963, art 9, § 29, previous caselaw involving the Headlee Amendment, and the underlying purpose for seeking a declaratory judgment.
The terms “net cost” and “actual cost” suggest a quantifiable dollar amount. However, nothing in MCL 21.233 suggests that it was intended to change the burden of proof in Const 1963, art 9, § 29. The specific costs that would be incurred are defined by reference to what costs the state would incur if it had to pay for the increased costs itself. Thus, it is the Legislature’s burden to demonstrate that those costs were not “necessary” under one or more of the exceptions in MCL 21.233(6)(a) to (d). Otherwise, the Legislature must determine what dollar amount is necessary, then appropriate that amount to the school districts.
This is so because MCL 21.233(6) defines “net cost” as “the actual cost to the state” if the state were to *489 provide the activity or service required. Clearly, the Legislature is in a position far superior to plaintiffs’ to determine what the actual cost to itself would be if it performed the increased recordkeeping and reporting duties. Proofs on this point are easily accessible to the state because it could ascertain the costs it would incur if it provided the new activity. The dispositive issue is the cost to the state if it were to provide the new or increased activity or service, not the cost incurred by the local governmental unit.[36]
To impose such a requirement on plaintiffs would be illogical and inconsistent with the purposes of the POUM provision of the Headlee Amendment. We have noted that the POUM provision is intended to address future services and activities.[37] Plaintiffs in this case filed suit fewer than two months after EO 2000-9 took effect. The parties stipulated at trial that plaintiff school districts were not required to begin complying with the order’s recordkeeping requirements until two years later.
Therefore, had this case been resolved in a timely fashion, EO 2000-9 would not have required plaintiffs to demonstrate specific amounts of necessary costs incurred. Moreover, it would have been difficult for *490 them to do so. Yet this Court specifically endorsed a prompt resolution of Headlee Amendment claims in Durant:
As arduous as the proceedings in this case have been, we have succeeded in deciding many points of law that will guide future decisions. Thus, there is every reason to hope that future cases will be much more straightforward. We anticipate that taxpayer cases filed in the Court of Appeals will proceed to rapid decision on the issue whether the state has an obligation under art 9, § 29 to fund an activity or service [38]
Finally, plaintiffs in this case seek a declaratory judgment, not monetary damages. An action for a declaratory judgment is typically equitable in nature and subject to different rules than other causes of action.[39] “The declaratory judgment rule was intended and has been liberally construed to provide a broad, flexible remedy with a view to making the courts more accessible to the people.”[40] We have also consistently held that “a court is not precluded from reaching issues before actual injuries or losses have occurred.”[41]
Defendants claim that a finding of necessary increased costs cannot be established without a compari *491 son between the specific net costs before and after the required change in activities. For the reasons stated previously, we reject this argument. Had this action proceeded to a prompt resolution, plaintiffs could not have demonstrated such a side-by-side comparison of the “before and after” costs incurred to meet the recordkeeping requirements. It would be nonsensical to impose this additional evidentiary requirement on plaintiffs here when, in another case, it would be impossible for the plaintiffs to make such a showing.
That this litigation was delayed long enough for plaintiff school districts to incur ascertainable increased costs is insufficient justification for holding plaintiffs to an evidentiary requirement they otherwise need not bear. Requiring plaintiffs to demonstrate specific costs is contrary to the purposes of an action for declaratory judgment under the POUM provision in Const 1963, art 9, § 29 and the language authorizing it.[42] The parade of potentially negative “consequences” of our holding to which the dissent refers does not alter these simple facts.[43]
B. ATTORNEY FEES
In their cross-appeal, plaintiffs argue that they are entitled to attorney fees under Const 1963, art 9, § 32 because they have been granted a declaratory judgment on their claim concerning the recordkeeping requirements. The Court of Appeals rejected this argument:
*492 Although plaintiffs have sustained their claim with regard to the data-collection and reporting requirements, it must be noted that this claim is but one of many plaintiffs initially raised in this action. Plaintiffs’ other claims were rejected by this Court. Adair, 250 Mich App 691. This Court’s decision with regard to those claims was sustained by our Supreme Court. Adair, 470 Mich 105. Under these circumstances, plaintiffs’ suit cannot be characterized has having been “sustained” within the meaning of [Const 1963, art 9,] § 32. Accordingly, we decline plaintiffs’ request for attorney fees.[44]
Plaintiffs’ entitlement to attorney fees is evaluated under Const 1963, art 9, § 32. That section states:
Any taxpayer of the state shall have standing to bring suit in the Michigan State Court of Appeals to enforce the provisions of Sections 25 through 31, inclusive, of this Article and, if the suit is sustained, shall receive from the applicable unit of government his costs incurred in maintaining such suit.
We previously held that the word “costs” in Const 1963, art 9, § 32 includes attorney fees incurred in litigating claims alleging a violation of the Headlee Amendment.[45] Therefore, if their “suit” has been “sustained,” plaintiffs are entitled to attorney fees in addition to other costs incurred in maintaining the suit.
The word “suit” and the word “sustained” are not defined in the applicable provisions of the Michigan Constitution or in the Headlee implementing legislation. Thus, we again apply the rule of common understanding to ascertain the purpose and intent of Const 1963, art 9, § 32.
*493 Black’s Law Dictionary defines “suit” as “[a]ny proceeding by a party or parties against another in a court of law[.]”[46] A lay dictionary defines “suit” as “4. Law. a. an act or instance of suing in a court of law; lawsuit, b. a petition or appeal.”[47] “Sustain” is defined as “to uphold as valid, just, or correct”[48] and “4. ([o]f a court) to uphold or rule in favor of.... 5. To substantiate or corroborate ... .”[49]
Applying the definitions to this case, we disagree with the Court of Appeals that plaintiffs’ suit has not been sustained. “Any proceeding” and “a petition or appeal” is broad language that encompasses a cause of action such as this one, in which 20 of plaintiffs’ 21 original claims were dismissed. Therefore, although most of plaintiffs’ claims were dismissed, plaintiffs’ recordkeeping claim, standing alone, constituted a “suit” under Const 1963, art 9, § 32. The recordkeeping claim has been the only claim litigated during the past six years.[50] It would defy the common understanding of the word “lawsuit” to conclude that such prolonged litigation does not constitute a “suit” within the meaning of Const 1963, art 9, § 32.
Moreover, plaintiffs’ recordkeeping claim, itself a suit as noted previously, has clearly been sustained. The Court of Appeals granted plaintiffs the entirety of the relief sought on their claim — a declaratory judgment— which we affirm. Consequently, this Court has upheld, *494 ruled in favor of, validated, substantiated, or corroborated plaintiffs’ suit. We therefore reverse the judgment of the Court of Appeals on this issue. Plaintiffs may recover attorney fees incurred during the litigation related to the recordkeeping claim only.
IV CONCLUSION
We affirm in part and reverse in part the judgment of the Court of Appeals. The recordkeeping requirements of MCL 388.1752 and EO 2000-9 required an increase in the level of activities or services by plaintiff school districts over what was previously required. Moreover, the increase resulted in increased costs that are more than de minimis. In order to prevail, plaintiffs were not required to show a quantified dollar-amount increase in costs in excess of a de minimis amount. Therefore, the recordkeeping requirements violate the POUM provision of the Michigan Constitution of 1963, at article 9, § 29. The declaratory judgment in favor of plaintiffs is affirmed.
Finally, we conclude that plaintiffs’ suit has been sustained within the meaning of Const 1963, art 9, § 32. Therefore, we reverse the Court of Appeals’ judgment and hold that plaintiffs are entitled to the costs incurred in maintaining this action. Those costs include an award of reasonable attorney fees incurred in litigating the recordkeeping claim only. We remand this case to the Court of Appeals for a determination of costs and attorney fees to be awarded, and we do not retain jurisdiction.
Cavanagh, Weaver, and Hathaway, JJ., concurred with Kelly, C.J.

 Const 1963, art 9, §§ 25 to 34.

 Const 1963, art 9, § 29.

 MCL 21.231 et seq.

 Currently, MCL 388.1752 provides, in part: “In order to receive funds under this act, each district and intermediate district shall also furnish to the center or the department, as applicable, the information the department considers necessary for the administration of this act. ...”

 MCL 388.1601 et seq. Part of the “necessary” information is that needed for compliance with the CEPI recordkeeping and reporting requirements in MCL 388.1694a.

 See Center for Educational Performance and Information, <http://www.michigan.gov/cepi> (accessed July 6, 2010) (“Our initiatives in data collection and reporting facilitate school districts’ compliance with the federal No Child Left Behind Act of2001 and the Michigan Department of Education’s accreditation plan, Education Yes! CEPI is an office located within the Office of the State Budget.”).

 PL 107-110, 115 Stat 1425. We note our holding in Durant v Michigan, 456 Mich 175, 199; 566 NW2d 272 (1997), that “there is no exception in [Const 1963,] art 9, § 29 for federal mandates, as long as the activity or service is mandated by state law.”

 The parties stipulated that nine school districts would be “representative school districts” for purposes of discovery and trial. Those nine districts were the Ann Arbor Public Schools, the Birmingham Public *475 Schools, the East Grand Rapids Public Schools, the Farmington Public Schools, the Forest Hills Public Schools, the Monroe Public Schools, the Oakland Schools, the School District of the City of Pontiac, and the Traverse City Area Public Schools.

 Adair v Michigan, 250 Mich App 691; 651 NW2d 393 (2002) (Adair I).

 Adair v Michigan, 470 Mich 105; 680 NW2d 386 (2004) (Adair II).

 Adair v Michigan (On Remand), 267 Mich App 583; 705 NW2d 541 (2005) (Adair III).

 Adair v Michigan, 474 Mich 1073 (2006) (Adair IV).

 Id.

 Adair v Michigan (On Second Remand), unpublished order of the Court of Appeals, entered April 18, 2006 (Docket No. 230858).

 Adair v Michigan (On Second Remand), 279 Mich App 507; 760 NW2d 544 (2008) (Adair V).

 Id. at 525.

 Adair v Michigan, 483 Mich 922 (2009). We limited our grant of leave to appeal to the issues of (1) whether the prohibition of unfunded mandates in Const 1963, art 9, § 29 requires plaintiffs to prove specific costs, either through the reallocation of funds or out-of-pocket expenses, to establish their entitlement to a declaratory judgment and (2) whether plaintiffs are entitled to recover the “costs incurred in maintaining” this suit, pursuant to Const 1963, art 9, § 32.

 People v Jackson, 483 Mich 271, 277; 769 NW2d 630 (2009).

 Eggleston v Bio-Med Applications of Detroit, Inc, 468 Mich 29, 32; 658 NW2d 139 (2003).

 White v City of Ann Arbor, 406 Mich 554, 562; 281 NW2d 283 (1979).

 Traverse City Sch Dist v Attorney General, 384 Mich 390, 405; 185 NW2d 9 (1971), quoting Cooley, Constitutional Limitations (emphasis omitted).

 Traverse City Sch Dist, 384 Mich at 405, quoting Cooley, Constitutional Limitations (emphasis omitted).

 Adair II, 470 Mich at 111, citing Judicial Attorneys Ass’n v Michigan, 460 Mich 590, 595; 597 NW2d 113 (1999).

 Durant v State Bd of Ed, 424 Mich 364, 379; 381 NW2d 662 (1985) (“The first sentence [of Const 1963, art 9, § 29] is aimed at existing services or activities already required of local government. The second sentence addresses future services or activities.”).

 The dissent is correct that we have previously concluded that the MOS and the POUM provisions are subject to similar requirements. Post at 500-501, quoting Adair II, 470 Mich at 120 n 13. However, in Adair II, a majority of this Court also specifically outlined the differences in the standards for claims arising under the two provisions:
*479 [T]o establish a Headlee violation under the MOS clause, the plaintiffs must show “(I) that there is a continuing state mandate, (2) that the state actually funded the mandated activity at a certain proportion of necessary costs in the base year of 1978-1979, and (3) that the state funding of necessary costs has dipped below that proportion in a succeeding year.” Oakland Co v Michigan, 456 Mich 144, 151; 566 NW2d 616 (1997) (opinion by Kelly, J.). Under the POUM clause, they must show that the state-mandated local activity was originated without sufficient state funding after the Headlee Amendment was adopted or, if properly funded initially, that the mandated local role was increased by the state without state funding for the necessary increased costs. [Adair II, 470 Mich at 111.]

 Id. at 111.

 Post at 501.

 Our Headlee caselaw does not answer this question. The dissent asserts that it is a foregone conclusion that “it is the plaintiffs burden to show an increase in necessary costs.” Post at 507 (emphasis omitted). The dissent cites nothing definitive in support of this proposition.

 However, if the state did appropriate funds for the new or increased activity or service, the plaintiff would likely have a higher burden in order to show a POUM violation. Under those circumstances, the state would not have violated the POUM provision per se by failing to provide funding. Because those circumstances are not presented in the instant case, we need not address this issue.

 It is undisputed that the state did provide a one-time appropriation to plaintiff school districts in 2002 for implementation of changes to the SRSD. We did not give the parties an opportunity to brief the issue of the relevancy of this appropriation. However, it is also undisputed that the state made no explicit appropriation for the increased activity involved in complying with the requirements for the SID, FID, or REP Therefore, the 2002 appropriation is irrelevant to our analysis.

 We reiterate that this conclusion is entirely consistent with a majority of this Court’s requirement in Adair II that plaintiffs “must show that the state-mandated local activity was originated without sufficient state funding after the Headlee Amendment was adopted ....” Adair II, 470 Mich at 111. Plaintiffs established that a state-mandated local activity, namely new and increased levels of data collection, originated from EO 2000-9. Plaintiffs further demonstrated that no state funding was appropriated to cover the new activity involved in implementing the SID, which had no predecessor before the issuance of EO *481 2000-9. The state also failed to appropriate any funding for the increased activity required to provide data for the FID and REE

 By way of illustration, consider a staff member who before implementation of the CEPI requirements needed to spend 20 hours a week collecting, maintaining, and reporting data required by the state. Assume that after the establishment of the CEPI, that staff member needed to spend 30 hours a week for the district to comply with the new requirements (presuming no contemporaneous cost savings elsewhere). The district incurred an increased “net cost” of 10 hours a week of that employee’s wages.
The Headlee Amendment does not require the district to show that its actual expenditures increased. MCL 21.233(6) defines “necessary cost” as the “actual cost to the state if the state were to provide the activity or service ....” In this example, plaintiffs could show that the state would incur the cost of paying a qualified person for 10 hours to collect, maintain, and report the new data. Even without such a showing, however, plaintiffs here demonstrated that the school districts’ actual expenditures increased as a result of their efforts to comply with the CEPI requirements.
This hypothetical example is a simplified version of the stipulated testimony of administrative personnel from the various districts. For example, Francine Mershman, a secretary in the Birmingham Public Schools, testified that in June and August, she spent about 95 percent of her time on data entry for the CEPI. During the time for student count reports, she devoted 75 to 80 percent of her time to CEPI recordkeeping. Throughout the rest of the year, CEPI recordkeeping took approximately 30 to 40 percent of her time. When asked what percentage of her time would have been spent on data collection 10 years earlier, Ms. Mershman replied “probably 10%.” She also stated that, although data collection previously increased at the end and beginning of the year, it still did not take “that much time.” During most of the school year, therefore, Ms. Mershman spent 30 to 40 precent of her time on data collection post-CEPI, as compared to 10 percent pre-CEPI.

 Moreover, defendants concede that plaintiff school districts incurred at least some actual increased costs. They argue, however, that the increased costs were not necessary increased costs, asserting that “in those few instances where [plaintiffs] can actually point to an actual cost incurred, the costs were either de minimis or unnecessary.”

 MCL 21.233 provides, in part:
(6) “Necessary cost” means the net cost of an activity or service provided by a local unit of government. The net cost shall be the actual cost to the state if the state were to provide the activity or service mandated as a state requirement, unless otherwise determined by the legislature when making a state requirement. Necessary cost does not include the cost of a state requirement if the state requirement satisfies 1 or more of the following conditions:
(a) The state requirement cost does not exceed a de minimus [sic] cost.
*486 (b) The state requirement will result in an offsetting savings to an extent that, if the duties of a local unit which existed before the effective date of the state requirement are considered, the requirement will not exceed a de minimus [sic] cost.
(c) The state requirement imposes additional duties on a local unit of government which can be performed by that local unit of government at a cost not to exceed a de minimus [sic] cost.
(d) The state requirement imposes a cost on a local unit of government that is recoverable from a federal or state categorical aid program, or other external financial aid. A necessary cost excluded by this subdivision shall be excluded only to the extent that it is recoverable.
(7) “New activity or service or increase in the level of an existing activity or service” does not include a state law, or administrative rule promulgated under existing law, which provides only clarifying nonsubstantive changes in an earlier, existing law or state law; or the recodification of an existing law or state law, or administrative rules promulgated under a recodification, which does not require a new activity or service or does not require sm increase in the level of an activity or service above the level required before the existing law or state law was recodified.
MCL 21.232(4) defines “de minimus [sic] cost” as “a net cost to a local unit of government resulting from a state requirement which does not exceed $300.00 per claim.”

 Reference to our previous example again provides a good illustration of the point. See note 32 of this opinion. Suppose a district must pay a qualified person for an additional 10 hours of work each week collecting, *488 maintaining, and reporting the data required for CEPI compliance. Assuming an hourly wage as low as $8, the “actual cost” to the state would exceed $300 within a month’s time.

 Thus, the dissent is mistaken in asserting that we require the state to prove what a local unit of government’s increased costs were, making its appropriation obligations under the Headlee Amendment unclear. This is a recurring theme throughout the dissenting opinion. See post at 502 n 9 (“[T]he state will be required to audit every POUM plaintiffs books and . .. extensive and intrusive discovery of local budgetary information may have to occur.”); post at 504 (“[T]he state is afforded no notice of what it must do to comply with the Headlee Amendment and is left only to guess at the size of the financial adjustment, and of the magnitude of the appropriation required ....”); post at 511-512 (“[E]stimated levels of accompanying appropriations will entail nothing more than speculation.”).

 Durant, 424 Mich at 379.

 Durant, 456 Mich at 205-206 (emphasis added).

 MCR 2.605 contains specific provisions governing actions for a declaratory judgment. MCR 2.605(A) empowers a court to “declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.” MCR 2.605(C) states that “[tjhe existence of another adequate remedy does not preclude a judgment for declaratory relief in an appropriate case.”

 Shavers v Attorney General, 402 Mich 554, 588; 267 NW2d 72 (1978), citing 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), committee comment, p 683; see also Revenue Comm’r v Grand Trunk W R Co, 326 Mich 371, 375; 40 NW2d 188 (1949).

 Shavers, 402 Mich at 589; see also Merkel v Long, 368 Mich 1, 11-14; 117 NW2d 130 (1962).

 Defendants also argued in the lower courts that (1) their one-time $3.4 million appropriation in 2002 sufficiently covered the increased costs plaintiff school districts incurred to comply with the CEPI requirements and (2) the mandate was fully funded by the state’s $3.5 billion appropriation of discretionary funds. Our order granting leave to appeal did not include these issues. Thus, we decline to address them here.

 Post at 510-513.

 Adair V, 279 Mich App at 525.

 Macomb Co Taxpayers Ass’n v L’Anse Creuse Pub Sch, 455 Mich 1, 10; 564 NW2d 457 (1997).

 Black’s Law Dictionary (8th ed).

 Random House Webster’s College Dictionary (2001).

 Id.

 Black’s Law Dictionary (8th ed).

 In Adair II, a majority of this Court affirmed the Court of Appeals’ dismissal of all of plaintiffs’ claims except for the recordkeeping claim, ending litigation on those claims. Adair II, 470 Mich at 133.