CAVANAGH, J.
(concurring in part and dissenting in part). There are generally two issues implicated in this *112 appeal. First, we asked the parties to address “which party has the burden of proving underfunding of a legislative mandate in a challenge under Const 1963, art 9, § 29” and the elements of such a claim. Adair v Michigan, 495 Mich 937, 937-938 (2014). This first issue involves a plaintiffs burden of proof in showing that the state underfunded “[a] new activity or service or an increase in the level of any activity or service beyond that required by existing law” for the purposes of the second provision of the Headlee Amendment, commonly referred to as a “prohibition on unfunded mandates” or “POUM” claim. Const 1963, art 9, § 29; Adair v Michigan, 486 Mich 468, 478; 785 NW2d 119 (2010) (Adair I).[1] In addition, we asked the parties to address “whether acceptance of a general appropriation from the Legislature which is specifically conditioned on compliance with reporting requirements pursuant to MCL 388.1622b([3])(c) waives any challenge to the funding level for those requirements under Const 1963, art 9, § 29.” Adair, 495 Mich at 938.[2]
*113 With respect to this second issue, I agree with the majority’s conclusion that plaintiff school districts did not waive their POUM claim by accepting the conditional appropriation under MCL 388.1622b (§ 22b). As the majority explains, nothing on the face of § 22b would lead plaintiffs to believe that accepting the funds would result in a waiver of a Headlee Amendment claim, and thus, plaintiffs did not intentionally relinquish a known right. See Sweebe v Sweebe, 474 Mich 151, 156-157; 712 NW2d 708 (2006) (citations omitted). Moreover, in Adair v Michigan (On Second Remand), 279 Mich App 507, 523-524; 760 NW2d 544 (2008), aff'd in part and rev’d in part by Adair I, 486 Mich 468, the Court of Appeals addressed a similar issue regarding a general appropriation under § 22b, holding that “the POUM clause reflects the intent of the voters that the Legislature actually determine the necessary costs associated with the implementation of new legislative mandates and then appropriate that amount for the express purpose of funding the new mandate.” (Emphasis added.) Accordingly, I agree with the majority’s rejection of defendants’ argument that accepting the conditional § 22b appropriation waived plaintiffs’ Headlee Amendment claim.
My agreement with the majority ends there, however. Specifically, with respect to the first issue, I dissent from the majority’s holding that a plaintiff alleging that the state failed to adequately measure and appropriate sufficient funding for the purposes of complying with the POUM provision must bear the burden to plead and *114 prove a quantified dollar amount of underfunding. As explained below, in deciding a POUM plaintiffs burden to show that the state failed to fully fund a new activity or service or an increase in the level of any activity or service, my aim is to recognize the dissimilarities of a per se and underfunding claim while remaining consistent with Adair Fs underlying principles. See Const 1963, art 9, § 29; MCL 21.233(6).
To begin, not unlike the majority, I think that there is a meaningful factual difference between a per se POUM claim, i.e., a mandate that was not accompanied by any appropriation, see Adair I, 486 Mich at 479 n 29, and a POUM claim alleging underfunding. In Adair I, which involved a per se POUM claim, we held that
to establish a violation of the POUM provision, a plaintiff must show that the state required a new activity or service or an increase in the level of activities or services. If no state appropriation was made to cover the increased burden on local government, the plaintiff need not show the amount of increased costs. It is then the state’s burden to demonstrate that no state funding was required because the requirement did not actually increase costs or the increased costs were not necessary. [Id. at 480.[3]]
Assuming that the state proceeded in good-faith compliance with its Headlee Amendment obligation, the state would have contemplated whether the mandate required an appropriation before it enacted the mandate at issue. See, generally, MCL 21.235(2). Specifically, if no funds were appropriated, the state would have necessarily determined that (1) the mandate would not constitute “a new activity or service or an increase in the level of any activities or services,” Const 1963, art 9, *115 § 29; (2) local governments would not have “necessary increased costs,” id,.; and (3) any increased cost was not a “necessary cost,” as defined by the Headlee Amendment’s implementing provisions, MCL 21.235(1) and MCL 21.233(6).[4] Our standard regarding a POUM plaintiffs burden alleging a per se violation established in Adair I reflects the fact that such a claim may involve disputes on one or more of those issues.
Conversely, when the state decides to appropriate funding in conjunction with the mandate for the express purpose of meeting its Headlee Amendment obligation, it is unlikely that any of the above consider *116 ations would be at issue. Instead, as plaintiffs assert in this case, the issue becomes whether the state properly measured the appropriation. For the purposes of that inquiry, the Legislature, pursuant to the constitutional directive to enact implementing legislation, see Const 1963, art 9, § 34, has instructed that the appropriation be measured by “the net cost of an activity or service provided by a local unit of government,” and the “net cost” “shall be the actual cost to the state if the state were to provide the activity or service mandated as a state requirement. . . .” MCL 21.233(6). This is consistent with this Court’s previous recognition that the statute’s reference to “actual cost to the state” is the proper measure of the appropriation. See Adair I, 486 Mich at 488-489; Durant v Michigan, 424 Mich 364, 390-391; 381 NW2d 662 (1985).
In my view, the majority erroneously bypasses the import of MCL 21.233(6) on the basis that the parties in this case did not address the “apparent tension” between (1) the POUM provision’s statement that the appropriation should be made “to pay the unit of Local Government for any necessary increased costs” and (2) the appropriation’s measure as the “actual cost to the state” under MCL 21.233(6).[5] “The legislature has *117 power to adopt a statute, except as it is prohibited by the Constitution; and a statute will not be declared in conflict with the Constitution while serious doubt exists as to such conflict.” Gratiot Co v Federspiel, 312 Mich 128, 132; 20 NW2d 131 (1945) (citations omitted). I have “serious doubt” whether there is such a conflict in this case, and therefore, in my opinion, the Legislature’s explicit measure of the appropriation under MCL 21.233(6) is a valid and indispensible consideration in properly addressing a POUM plaintiffs burden to sustain a claim of underfunding.
To elaborate, under Const 1963, art 9, § 29, the POUM provision requires that local governments have projected or incurred “necessary increased costs” resulting from the mandate. See Adair I, 486 Mich at 483-485. The implementing legislation then requires that the local governments’ costs be increased beyond a de minimis amount before an appropriation is required. MCL 21.233(6) and MCL 21.232(4). That system is sensible because if the local governments’ “necessary increased costs” are not increased beyond a de minimis amount, to otherwise require an appropriation would create a windfall for local governments.[6] Stated differently, there is no need for funding if it would merely cost local governments, at most, a de minimis amount to implement the mandate. If, however, local governments’ costs will increase beyond a de minimis amount as a result from the mandate, an appropriation is *118 required, but it is not measured by the dollar amount of the local governments’ costs to implement the mandate. Instead, MCL 21.233(6) requires that the appropriation be measured by the state’s costs if it were to perform the activity or service, which is consistent with the Headlee Amendment’s purpose—i.e., that the state cannot shift its costs to locad governments to perform what the state would like to see implemented.[7] In sum, using the state’s costs as the measure of the appropriation ensures that the state does not unconstitutionally increase local tax burdens because it provides local governments with the money that the state is saving by not implementing the mandate itself. But the POUM provision does not require that the state make an appropriation to local governments if the mandate will not increase the local governments’ necessary costs beyond a de minimis amount.
Additionally, I disagree with a key premise and strong implication on which the majority relies: that Adair I in its entirety merely stands for a “narrow exception” to a longstanding general rule regarding a POUM plaintiffs burden. Rather, I agree with the unanimous Court of Appeals opinion below that there are relevant general principles underlying Adair J’s analysis of the Headlee Amendment. See Adair v Michigan, 302 Mich App 305, 314-315; 839 NW2d 680 (2013).
Specifically, addressing whether the mandates resulted in increased costs to plaintiff school districts, Adair I relied on the language of the Headlee Amendment and MCL 21.233(6), which undoubtedly remains applicable regardless of whether a per se or under *119 funded POUM claim is at issue. We held that evidence of a “diversion of manpower . .. constituted increased costs to the districts.” Adair I, 486 Mich at 483-484. And by juxtaposing the reference to “actual cost to the state” under MCL 21.233(6)[8] to the language of the Headlee Amendment, we concluded that “[t]he Headlee Amendment does not require the district to show that its actual expenditures increased.” Adair I, 486 Mich at 484 n 32 (emphasis added). Further, when discussing the implementing statute, Adair I stated:
Neither Const 1963, art 9, § 29 nor MCL 21.233 suggests that plaintiffs bear the burden of proving precisely how much the school districts’ costs increased as a result of the mandate. In fact, the language of MCL 21.233 implies the opposite. That section defines “necessary cost” as the “net cost of an activity or service provided by a local unit of government.” The “net cost” is defined as “the actual cost to the state if the state were to provide the activity or service mandated as a state requirement....” [Id. at 486-487.]
Because Adair I involved a per se violation of the POUM clause, we held that “a plaintiff need only establish that the state imposed on it a new or increased level of activity without providing any funding to pay for it.” Id. at 487. As explained earlier, the pertinent difference between a per se and an underfunded POUM claim is that the latter only involves an inquiry into the sufficiency of the appropriation. Because the appropriation, consistently with our caselaw and legislative instruction, is measured by the actual cost to the state if the state were to provide the new activity, the burden to show that the Legislature’s appropriation accurately reflects the state’s costs is properly placed on the state. See id. at 489 (“[T]he Legislature is in a position far *120 superior to plaintiffs’ to determine what the actual cost to itself would be if it performed the increased record-keeping and reporting duties. Proofs on this point are easily accessible to the state because it could ascertain the costs it would incur if it provided the new activity.”). While Adair I held that local governments must have “necessary increased costs” associated with implementing the mandate that exceed a de minimis amount, the local governments’ costs need not be quantified for the purposes of measuring the sufficiency of the appropriation; whereas, the state’s quantified costs if it were to implement the mandate are central to a claim that a POUM mandate was underfunded.
That is not to say that a plaintiff should be able to succeed under a POUM claim with a bare assertion that the state has underfunded the appropriation. I fully appreciate that we noted in Adair I that a plaintiffs burden “would likely [be] higher” when the Legislature did, in fact, appropriate funds, as opposed to the lack of any appropriation at issue in Adair I. See Adair I, 486 Mich at 480 n 29. Also, as the majority emphasizes, in 2007 a majority of this Court adopted MCR 2.112(M), which requires, in part, that a Headlee Amendment plaintiff “state with particularity the type and extent of the harm ....” Again, I think that “[t]he dispositive issue is the cost to the state if it were to provide the new or increased activity or service, not the cost incurred by the local governmental unit.” Adair I, 486 Mich at 489. Thus, I would not apply this requirement in a manner that requires a plaintiff to arrive at the numeric difference between the state’s actual costs and the amount that the state did in fact appropriate for the purposes of a pleading requirement or a plaintiffs ultimate burden of proof.
Instead, in keeping with Adair 7’s burden-shifting framework, I would hold that to overcome the state’s *121 motion for summary disposition, a plaintiff must show that there is a genuine issue of material fact that the state underfunded the appropriation. See MCR 2.116(C)(10). Depending on the nature of the underlying subject matter of the mandate and the circumstances surrounding the mandate’s enactment with its accompanying appropriation, I would imagine that proofs in this regard might vary from case to case. For example, as the majority accurately explains, the appropriations in this case followed our holding in Adair I. Plaintiffs assert that the appropriations were measured on the basis of a cost study designed to bring the state into compliance with the Headlee Amendment, and, accordingly, they proffered detailed expert testimony about specific expenditures that were not accounted for in the cost study and the following appropriations. I agree with the Court of Appeals’ conclusion that this evidence shows
that plaintiffs stood ready to present some evidence that, if determined credible by the trier of fact, would have undermined the validity of the method used by the Legislature to determine the amount of the appropriations at issue and that would have shifted the burden of going forward with evidence to the state to present some evidence that the appropriations do fully fund the state’s obligation under the POUM provision. [Adair, 302 Mich App at 316-317.[9]
*122 I also think that this conclusion is consistent with MCR 2.112CM) because, in alleging specific expenditures that had not been accounted for by the state’s cost study, plaintiffs alleged the “extent” of the underfunding by claiming what the Legislature failed to value, albeit without quantifying what those expenditures would cost the state if it were to implement the mandate. See The American Heritage Dictionary of the English Language (1981) (defining “extent” as “[t]he range over which something extends; scope; comprehensiveness”).[10]
Finally, the majority reasons that requiring plaintiffs “to establish the specific amount of funding... reduces litigation gamesmanship” and “avoids needless litigation.” However, I disagree with the instant majority’s “parade of potentially negative ‘consequences’ ” that would occur if it declined to adopt the state’s argument in this case. Adair I, 486 Mich at 491.[11] It is true that a *123 POUM plaintiff may end up with a declaratory judgment that merely states that there was underfunding, which would require the Legislature to appropriate supplemental funding. Yet because the required appropriation is statutorily measured as the state’s costs if it were to implement the mandate, there is no guesswork about local governments’ costs and the appropriation, as the current majority insinuates. In my view, the fact that a plaintiff may file another claim alleging further insufficient funding, i.e., that the state continues to fail to comply with its Headlee Amendment obligation, is no reason to heighten a plaintiffs initial burden. Stated differently, it is the state’s duty in the first instance to adequately fund the mandate. As a result, when faced with an allegation that the state underfunded a mandate, I do not believe it is unreasonably cumbersome to place the burden on the state to show that it accurately measured the appropriation. That is because if it had complied with the POUM provision in the first instance, it would know exactly how the appropriation was measured, which, if accurate, would swiftly and effectively dispose of any allegations of underfunding.[12]
*124 In light of my analysis, I respectfully dissent from the majority’s holding that a Headlee Amendment plaintiff alleging that the state did not properly measure and fund a mandate that falls within the scope of the POUM provision must plead and prove a specific, quantified dollar amount of underfunding. As a result, I would affirm the judgment of the Court of Appeals and allow this case to continue in proceedings before the special master.

 In full, Const 1963, art 9, § 29 states:
The state is hereby prohibited from reducing the state financed proportion of the necessary costs of any existing activity or service required of units of Local Government by state law. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs. The provision of this section shall not apply to costs incurred pursuant to Article VI, Section 18.
As the majority notes, the first sentence of the Headlee Amendment is described as the “maintenance of support” (“MOS”) provision. Adair I, 486 Mich at 478. As in Adair I, “[o]nly the POUM provision is at issue in this case.” Id.

 MCL 388.1622b states in relevant part:
*113 (3) In order to receive an allocation under subsection (1), each district shall do all of the following:
(c) Furnish data and other information required by state and federal law to the center and the department in the form and manner specified by the center or the department, as applicable.

 Notably, in Adair I, we expressly left unanswered the issue of a POUM plaintiffs burden when it is alleged that an appropriation was underfunded. See Adair I, 486 Mich at 479 n 28.

 MCL 21.235(1) states, “The legislature shall annually appropriate an amount sufficient to make disbursements to each local unit of government for the necessary cost of each state requirement pursuant to this act, if not otherwise excluded by this act.”
MCL 21.233(6) states in relevant part:
“Necessary cost” means the net cost of an activity or service provided by a local unit of government. The net cost shall be the actual cost to the state if the state were to provide the activity or service mandated as a state requirement, unless otherwise determined by the legislature when making a state requirement. Necessary cost does not include the cost of a state requirement if the state requirement satisfies 1 or more of the following conditions:
(a) The state requirement cost does not exceed a de minimus [sic] cost.
(b) The state requirement will result in an offsetting savings to an extent that, if the duties of a local unit which existed before the effective date of the state requirement are considered, the requirement will not exceed a de minimus [sic] cost.
(c) The state requirement imposes additional duties on a local unit of government which can be performed by that local unit of government at a cost not to exceed a de minimus [sic] cost.
In turn, “[d]e minimus [sic] cost” is defined by MCL 21.232(4), which states, “ ‘De minimus [sic] cost’ means a net cost to a local unit of government resulting from a state requirement which does not exceed $300.00 per claim.”

 To the extent that the majority is correct that the effect of MCL 21.233(6) on the issue currently before this Court is not preserved, “the preservation requirement is not an inflexible rule; it yields to the necessity of considering additional issues when necessary to a proper determination of a case.” Klooster v Charlevoix, 488 Mich 289, 310; 795 NW2d 578 (2011) (citations and quotation marks omitted). Moreover, the majority’s treatment of the “apparent tension” between the POUM provision and MCL 21.233(6) is similar to the Adair I dissent. See Adair I, 486 Mich at 506 n 17 (Markman, J., dissenting) (explaining that the arguable conflict between the POUM provision and MCL 21.233(6) was not raised by the parties in that appeal, and thus, declined to address the issue fully). Avoiding this issue in Adair I when this Court was not considering the sufficiency of funds that were actually appropriated *117 might have been tenable because no appropriation had been made, but for the reasons stated within, I think that it must he addressed in this case.

 See Adair I, 486 Mich at 477 (“When interpreting constitutional provisions, we are mindful that the interpretation given the provision should he the sense most obvious to the common understanding and one that reasonable minds, the great mass of the people themselves, would give it.”) (citations and quotation marks omitted).

 See Durant, 424 Mich at 391 (“Providing only the actual cost to the state, if it provided the service, is in keeping with the voters’ desire that there be no shift of responsibility for services from the state to the local governments without adequate compensation.”).

 Emphasis added.

 As the majority aptly explains, plaintiffs appealed defendants’ motion for involuntary dismissal. I offer an analysis applicable to a motion for summary disposition under MCR 2.116(C)(10), however, in order to provide further explanation of my view of the parties’ burdens. Nevertheless, I believe that the special master erred by granting defendants’ motion for involuntary dismissal because I do not think that the special master was correct that “on the facts and the law the plaintiff[s] ha[d] shown no right to relief,” given my view of plaintiffs’ proper burden in the case. See Samuel D Begola Services, Inc v Wild Bros, 210 Mich App 636, 639; 534 NW2d 217 (1995).

 Citing Oakland Co v Michigan, 456 Mich 144, 166; 566 NW2d 616 (1997) (opinion hy Marilyn Kelly, J.), the majority reasons that MCR 2.112(M) requires and our caselaw has “consistently announced” that Headlee Amendment plaintiffs must allege the type and extent of harm. However, I fail to see how either the court rule’s or Oakland Co’s reference to the “extent” of harm necessarily means that a POUM plaintiff alleging underfunding must show the specific dollar figure of underfunding. Moreover, to the extent that the majority finds Oakland Co relevant in this case on the basis of a rule that is often quoted in the context of Headlee Amendment claims—i.e., that because the MOS and POUM provisions are contained within the same amendment, they are read harmoniously, see, e.g., Durant, 424 Mich at 380 n 7—I continue to think that this general rule has limited application when the underlying issue involves a matter that is specific to one of the two provisions. See Schmidt v Dep’t of Ed, 441 Mich 236, 278 n 15; 490 NW2d 584 (1992) (Cavanagh, J., dissenting). See, also, Judicial Attorneys Ass’n v Michigan, 460 Mich 590, 616 n 5; 597 NW2d 113 (1999) (Cavanagh, J., dissenting). And in my view, considering a POUM plaintiffs burden of proof is a consideration apart from a MOS plaintiffs burden of proof. See, generally, Adair, 279 Mich App at 511-513.

 The policy argument asserted by the majority was also a point of contention in Adair I. Compare Adair 1, 486 Mich at 491 (opinion of the Court), with Adair I, 486 Mich at 510-513 (Markman, J., dissenting).

 The majority further supports its conclusion that a POUM plaintiff must prove the specific amount of the funding shortfall by, again, relying on a single statement made in Oakland Co, 456 Mich at 166 (opinion by Kelly, J.), that “future plaintiffs must allege the type and extent of the harm so that the court may determine if a [violation of Const, 1963, art 9, § 29] occurred for purposes of making a declaratory judgment. In that way, the state will be aware of the financial adjustment necessary to allow future compliance (emphasis added).” Viewed in context, Oakland Co was explaining that, while it is an atypical remedy, plaintiffs may obtain a monetary damage award for a Headlee Amendment violation when the state consistently refuses to comply with its funding obligations. As explained earlier, because the state is well equipped to determine how much an activity or service would cost if the state were implementing it, it does not have to rely on local governments to inform the state of the financial adjustment necessary to bring it in compliance with article 9, § 29. Indeed, if the contrary were true, the state would have to seek *124 counsel from local governments before enacting any mandate falling under the POUM provision in the first place or risk violating the Constitution every time such a mandate is made. In my view, that was not the intent of the above statement in Oakland Co.