SMITH v PARKLAND INN/CASUALTY RECIPROCAL EXCHANGE

Docket No. 278676. Submitted June 10, 2008, at Detroit. Decided July 17, 2008, at 9:05 a.m. Leave to appeal sought.

Jana Smith sustained a disabling injury at her job at the Parkland Inn. At the time of her injury, Smith held a second job at a restaurant. Smith received an open award of workers' compensation benefits payable in full by Casualty Reciprocal Exchange, the Parkland Inn's workers' compensation insurer, pursuant to the dual employment provisions of the workers' compensation act, MCL 418.372. The insurer, as provided under MCL 418.372(1)(b), received quarterly reimbursements from the Second Injury Fund (SIF) for the portion of benefits based on Smith's second job. The insurer subsequently became insolvent, and the Michigan Property & Casualty Guaranty Association (MPCGA) began paying Smith's full benefits in place of the insolvent insurer pursuant to the Property and Casualty Guaranty Association Act, MCL 500.7901 *et seq.* The MPCGA initiated proceedings in the Workers' Compensation Agency, seeking reimbursement by the SIF for the portion of workers' compensation benefits based on Smith's second job. A workers' compensation magistrate and the Workers' Compensation Appellate Commission both issued decisions in favor of the MPCGA after determining that the MPCGA is an "insurer" entitled under MCL 418.372(1)(b) to reimbursement by the SIF for the portion of benefits based on Smith's second job. The SIF appealed by leave granted.

The Court of Appeals *held*:

MCL 418.601(a) of the workers' compensation act defines "insurer" as an organization that transacts the business of workers' compensation insurance within the state of Michigan. Under MCL 500.7911(3) of the Property and Casualty Guaranty Association Act, the MPCGA is subject to the laws of Michigan to the extent that it would be subject to those laws if it were an insurer organized and operating under MCL 500.5000 *et seq.*, to the extent that those laws are consistent with the Property and Casualty Guaranty Association Act. Under MCL 500.7931(2) of that act, the MPCGA assumes the rights of an insolvent insurer. In light of

these statutory provisions, the MPCGA is an insurer that is eligible for reimbursement by the SIF under MCL 418.372(1)(b).

Affirmed.

WORKERS' COMPENSATION — DUAL EMPLOYMENT — SECOND INJURY FUND — MICHIGAN PROPERTY & CASUALTY GUARANTY ASSOCIATION.

The Michigan Property & Casualty Guaranty Association, when it assumes an obligation by an insolvent workers' compensation insurer to pay the full workers' compensation benefits of a dually employed injured worker, is entitled to reimbursement by the Second Injury Fund for those portions of benefits that are based on the injured worker's second job (MCL 418.372[1][b], 500.7911[3], 500.7931[2]).

*Dykema Gossett PLLC* (by *Suzanne Sahakian* and *Erica L. Keller*) for the Michigan Property & Casualty Guaranty Association.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Morrison Zack*, Assistant Attorney General, for the Second Injury Fund.

Before: MARKEY, P.J., and WHITE and WILDER, JJ.

PER CURIAM. The Second Injury Fund, Dual Employment Provision (SIF), was granted leave to appeal a May 15, 2007, order of the Workers' Compensation Appellate Commission (WCAC) that affirmed a magistrate's decision to grant the request of the Michigan Property & Casualty Guaranty Association (MPCGA) for reimbursement from the SIF for a portion of benefits paid to plaintiff by the MPCGA. We affirm.

This case arises out of a disabling injury plaintiff suffered while she was working for the Parkland Inn. In December 1992, plaintiff was granted an open award of benefits. At the time of her injury, plaintiff was also employed by Andoni's Restaurant. Under the dual employment provision of MCL 418.372, Parkland Inn's

workers' compensation insurer, Casualty Reciprocal Exchange (CRE), paid plaintiff at her full rate of benefits (which was based on plaintiff's employment with both Parkland Inn and Andoni's Restaurant), but was reimbursed quarterly by the SIF for the portion of benefits CRE paid that was based on plaintiff's employment with Andoni's Restaurant.

Subsequently, however, CRE became insolvent. Consequently, by operation of the Property and Casualty Guaranty Association Act, MCL 500.7901 *et seq.*, the MPCGA began paying plaintiff's full benefit in place of CRE. The MPCGA requested quarterly reimbursement from the SIF (consistent with the SIF's reimbursement of CRE), but the request was denied.

In light of the denial, the MPCGA initiated proceedings in the Workers' Compensation Agency seeking reimbursement from the SIF for the share of plaintiff's benefit that was attributable to plaintiff's employment at Andoni's Restaurant. In support of the claim for reimbursement, the MPCGA relied on MCL 418.372(1), which provides, in part:

> If an employee was engaged in more than 1 employment at the time of a personal injury or a personal injury resulting in death, the employer in whose employment the injury or injury resulting in death occurred is liable for all the injured employee's medical, rehabilitation, and burial benefits. Weekly benefits shall be apportioned as follows:
>
> * * *
>
> (b) If the employment which caused the personal injury or death provided 80% or less of the employee's average weekly wage at the time of the personal injury or death, the insurer or self-insurer is liable for that portion of the employee's weekly benefits as bears the same ratio to his or her total weekly benefits as the average weekly wage from the employment which caused the personal injury or death

bears to his or her total weekly wages. The second injury fund is separately but dependently liable for the remainder of the weekly benefits. The insurer or self-insurer has the obligation to pay the employee or the employee's dependents at the full rate of compensation. The second injury fund shall reimburse the insurer or self-insurer quarterly for the second injury fund's portion of the benefits due the employee or the employee's dependents.

The determinative issue in this case is whether the MPCGA is an "insurer" under MCL 418.372(1)(b). For purposes of the Worker's Disability Compensation Act, "insurer" is defined as "an organization that transacts the business of worker's compensation insurance within this state." MCL 418.601(a). Both the magistrate and WCAC found that the MPCGA met this definition. We agree.

The MPCGA is an association of all insurers authorized to engage in the business of insurance (other than life or disability insurance) in Michigan. MCL 500.7911(1). Each insurer is a member of the association as a condition of its authority to transact insurance business in this state. *Id.* To fund the cost of the MPCGA's operations, all member insurers are levied assessments by the MCPGA. MCL 500.7941(1). The MPCGA is subject to the laws "of this state to the extent that it would be subject to those laws if it were an insurer organized and operating under [MCL 500.5000 *et seq.*], to the extent that those other laws are consistent with this chapter." MCL 500.7911(3).

The purpose of the MPCGA is to fulfill the obligations of an insolvent insurer in regard to "covered claims." MCL 500.7925(1) provides in part:

"Covered claims" means obligations of an insolvent insurer that meet all of the following requirements:

(a) Arise out of the insurance policy contracts of the insolvent insurer issued to residents of this state or are payable to residents of this state on behalf of insureds of the insolvent insurer.

(b) Were unpaid by the insolvent insurer.

(c) Are presented as a claim to the receiver in this state or the association on or before the last date fixed for the filing of claims in the domiciliary delinquency proceedings.

(d) Were incurred or existed before, at the time of, or within 30 days after the date the receiver was appointed.

(e) Arise out of policy contracts of the insolvent insurer issued for all kinds of insurance except life and disability insurance.

(f) Arise out of insurance policy contracts issued on or before the last date on which the insolvent insurer was a member insurer.

To effectuate the fulfillment of the MPCGA's purpose, the MPCGA assumes the rights of an insolvent insurer as follows:

The association shall be a party in interest in all proceedings involving a covered claim and shall have the same rights as the insolvent insurer would have had if not in receivership, including the right to appear, defend, and appeal a claim in a court of competent jurisdiction; to receive notice of, investigate, adjust, compromise, settle, and pay a covered claim; and to investigate, handle, and deny a noncovered claim. The association shall not have a cause of action against the insureds of the insolvent insurer for any sums it has paid out, except those causes of action that the insolvent insurer would have had if the sums had been paid by the insolvent insurer, or except as otherwise provided by this chapter. [MCL 500.7931(2).][1]

---

[1] The SIF advocates a narrow interpretation of MCL 500.7931(2) in regard to the rights of the MPCGA. The SIF argues that under the doctrine of *ejusdem generis*, because the general phrase "the same rights as the insolvent insurer" is followed by a specific list of rights that are

In light of the preceding statutory provisions, we conclude that the MPCGA is an "insurer" as defined by MCL 418.601(a). This Court must apply clearly worded statutory provisions as written,[2] and under the plain unambiguous language of MCL 418.601(a), all that is required to meet the definition of "insurer" is that "an organization" be one "that transacts the business of worker's compensation insurance" in Michigan. MCL 418.601(a).[3] Here, as an "association," MPCGA is an "organization." See *Random House Webster's College Dictionary* (1997), p 920. And, in our opinion, an association that is subject to the same laws as a workers' compensation insurer, assumes the obligations of an insolvent workers' compensation insurer, and has the same rights as the insolvent workers' compensation

---

administrative and procedural in nature, the rights of the MPCGA are limited to those of a similar character. However, where, as here, the general term precedes the more specific terms, the doctrine of *ejusdem generis* does not apply. See *Brown v Farm Bureau Gen Ins Co of Michigan*, 273 Mich App 658, 664; 730 NW2d 518 (2007). The SIF also argues that under the doctrine of *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another) the rights of the MPCGA are limited to those rights listed in the statute. But this Court has held that "[a] fair reading of the language of § 7931(2) does not lead one to the conclusion that the rights enumerated therein are all-inclusive." *Felsner v McDonald Rent-A-Car Inc*, 173 Mich App 518, 523; 434 NW2d 178 (1988). Although *Felsner* is not binding authority, see MCR 7.215(J)(1), we agree with the decision. The doctrine of *expressio unius est exclusio alterius* "does not subsume the plain language of the statute when determining the intent of the Legislature." *Tuggle v Dep't of State Police*, 269 Mich App 657, 664; 712 NW2d 750 (2006). By prefacing the specific list of rights in MCL 500.7931(2) with the word "including," the Legislature clearly did not intend the list to be exclusive.

[2] See generally, *Rowell v Security Steel Processing Co*, 445 Mich 347, 353-354; 518 NW2d 409 (1994).

[3] The SIF focuses heavily on the absence of a contractual relationship between the MPCGA and an insured; however, under the plain language of MCL 418.601(a), no contractual relationship is required. Therefore, the fact that there is no contractual relationship does not preclude a finding that the MPCGA is an "insurer" under that provision.

insurer as to those obligations is one that "transacts the business of worker's compensation insurance." As a result, we agree with the magistrate and the WCAC that the MPCGA is an "insurer" under MCL 418.601(a) and therefore eligible for reimbursement from the SIF under MCL 418.372(1)(b).[4]

We affirm.

---

[4] We decline to address the SIF's public policy arguments. Since the relevant statutory provisions are clear, they must be enforced as written, and this Court may not independently determine the best public policy. See *Tull v WTF, Inc*, 268 Mich App 24, 36; 706 NW2d 439 (2005).