ADAIR v STATE OF MICHIGAN

Docket No. 302142. Submitted July 25, 2013, at Lansing. Decided
August 22, 2013, at 9:00 a.m. Leave to appeal sought.

Daniel Adair, the Fitzgerald Public Schools, and others brought a
declaratory judgment action in the Court of Appeals against the
state of Michigan and several state departments and officials,
alleging that defendants had violated the prohibition of unfunded
mandates (POUM) in Const 1963, art 9, § 29, part of the Headlee
Amendment, by failing to fully fund, among other things, the costs
of collecting, maintaining, and reporting information to the Center
for Educational Performance and Information (CEPI) as MCL
388.1694a requires. The Court referred the matter to a special
master, Michael Warren, J., who issued a series of advisory rulings
and ultimately directed a verdict in favor of defendants on the
ground that, because some money had been appropriated for the
costs of compliance with the CEPI mandates, plaintiffs were
required to establish the specific dollar amount of the funding
insufficiency and had failed to do so.

The Court of Appeals *held*:

1. The special master's findings of fact and conclusions of law
were adopted with the exception of the master's characterization
of plaintiffs' burden of proof.

2. The special master erred by directing a verdict in favor of
defendants because plaintiffs were not required to establish the
specific dollar amount of the alleged underfunding of the appro-
priations that would be required to comply with the CEPI report-
ing requirements, even though some money had been appropri-
ated. Rather, plaintiffs were required to present evidence that was
sufficient to allow the trier of fact to conclude that the method the
Legislature employed to determine the amount of the appropria-
tion was so flawed that it failed to reflect the actual cost to the
state if the state were to provide the activity or service at issue.
The matter was remanded to the special master for the reopening
of proofs and the finding of facts regarding plaintiffs' claim that
the existing appropriations did not fully fund the necessary costs
of the CEPI mandates.

3. The special master properly concluded that the Legislature

had not imposed unfunded mandates on the school districts in violation of the POUM provision when it enacted 2011 PA 100 through 103, which amended various statutes governing teachers' employment and tenure, because none of these acts imposed new or increased activities on the school districts within the meaning of the POUM provision.

4. The special master properly concluded that plaintiffs' challenge to the constitutionality of the Legislature's funding scheme to reimburse school districts for the costs they incurred by complying with the CEPI recordkeeping mandates failed under *Durant v Michigan*, 251 Mich App 297 (2002), and *Durant v Michigan (On Remand)*, 238 Mich App 185 (1999), which held that the state's funding obligations under the Headlee Amendment could be satisfied by reallocating a portion of the funds that are appropriated and disbursed annually to local school districts under § 11 of the State School Aid Act, MCL 388.1601 *et seq.*

5. The special master correctly concluded that plaintiffs' action was not barred by the doctrine of res judicata because their claims did not arise from the same transactional setting as the previously litigated Headlee challenge and arose well after that challenge was resolved.

6. The special master correctly rejected the state's defense that the discretionary funds appropriated in § 22 of both 2010 PA 217 and 2011 PA 62 satisfied the state's POUM obligation because that argument was expressly rejected in *Adair v Michigan (On Second Remand)*, 279 Mich App 507 (2008).

Declaratory judgment granted in part; matter remanded to the special master for further findings of fact; jurisdiction retained.

CONSTITUTIONAL LAW — PROHIBITION OF UNFUNDED MANDATES — HEADLEE AMENDMENT — BURDEN OF PROOF — SPECIFIC DOLLAR AMOUNTS.

To establish that the state violated the constitutional prohibition of unfunded mandates, a plaintiff need not establish the specific dollar amount of the alleged underfunding of the state's appropriation and disbursal of funds to pay for the costs necessitated by the new or increased activity or service that the state required of a local unit of government; instead, a plaintiff must present evidence that is sufficient to allow the trier of fact to conclude that the method the Legislature employed to determine the amount of the appropriation was so flawed that it failed to reflect the actual cost to the state if the state were to provide the activity or service at issue (Const 1963, art 9, § 29; MCL 21.233[6]).

*Secrest Wardle* (by *Dennis R. Pollard* and *Mark A. Roberts*) for plaintiffs.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Matthew Schneider*, Chief Legal Counsel, and *Timothy J. Haynes* and *Jonathan S. Ludwig*, Assistant Attorneys General, for defendants.

Before: O'CONNELL, P.J., and TALBOT and OWENS, JJ.

PER CURIAM. This original taxpayer action is brought pursuant to the provisions of the Headlee Amendment, Const 1963, art 9, §§ 25 through 34. The action addresses the parameters of the state's funding obligations under the second sentence of § 29 of the amendment—commonly referred to as the "prohibition of unfunded mandates" or POUM provision—and Proposal A, Const 1963, art 9, § 11. Our Supreme Court held that the state violated the POUM provision when it required plaintiff school districts to collect, maintain, and report to the Center for Educational Performance and Information (CEPI) certain types of data for use by the state, without providing funds to reimburse the school districts for the necessary increased costs they would incur in order to comply with those recordkeeping mandates. *Adair v Michigan*, 486 Mich 468, 494; 785 NW2d 119 (2010) (*Adair I*). Thereafter, our Legislature appropriated $25,624,500 to reimburse plaintiff school districts for the compliance costs incurred during the 2010-2011 school year. The Legislature increased the appropriation to $34,064,500 for the 2011-2012 school year, which also included an allocation of $8,440,000 to reimburse the school districts for the costs of complying with the new CEPI mandate to report student performance data to the Teacher Student Data Link. Plaintiffs, who are 465 school districts

and a representative taxpayer from each district, now challenge the constitutionality of the method by which the Legislature funded these appropriations. They also challenge the adequacy of the amount of each appropriation. Finally, plaintiffs allege that the Legislature violated the POUM provision by imposing new or an increased level of activities on the districts through amendments to several provisions of the Revised School Code, MCL 380.1 *et seq.*, the teacher tenure act, MCL 38.71 *et seq.*, and the public employment relations act (PERA), MCL 423.201 *et seq.*, without appropriating any funding to reimburse the school districts for the necessary costs associated with satisfying the new mandates. We referred this matter to a special master, who made a series of advisory rulings that ultimately resulted in the entry of a directed verdict in favor of the state.

We adopt the findings of fact and conclusions of law of the special master, with the exception of the special master's characterization of plaintiffs' burden of proof. Accordingly, we enter a declaratory judgment, in part, in favor of the state, but also remand this matter to the special master to take additional proofs and conduct further fact-finding. The motion to expedite is denied as moot. We decide this case without oral argument pursuant to MCR 7.214(E).

I

The special master convened an evidentiary hearing, the subject of which was plaintiffs' claim that the existing appropriations do not fully fund the necessary costs of the CEPI mandates as the POUM provision requires. Plaintiffs' lead counsel asserted during his opening statement that, in order to sustain this claim, plaintiffs must show only that the amounts appropri-

ated for the two fiscal years "are inadequate," that is, that they do not represent full state financing as required by §§ 25 and 29 of article 9.[1] Counsel explained that plaintiffs would carry this burden by presenting expert testimony that would show that the method employed by the Legislature to determine the amount of the challenged appropriations was flawed and that the use of this flawed method resulted in a level of appropriation that was "grossly below" the amount of funding needed to reimburse the cost of all the activities associated with the collection, maintenance, and reporting of the data. Counsel rejected the proposition that plaintiffs were required to establish the exact amount of the alleged underfunding and candidly admitted that plaintiffs could not do so. Immediately following this opening statement, the state sought a directed verdict in its favor. According to the state, plaintiffs bore the burden of showing the specific dollar amount of the alleged underfunding of the state's POUM funding obligation. Because plaintiffs admitted that they could not do so, plaintiffs could not sustain their challenge to the adequacy of the appropriations, and the state was entitled to a directed verdict. The special master agreed and directed a verdict for the state. We conclude that the special master held plaintiffs to a higher standard of

---

[1] Section 25 of the Headlee Amendment summarizes the "fairly complex system of revenue and tax limits" imposed by the provisions of the amendment, *Durant v Michigan*, 456 Mich 175, 182; 566 NW2d 272 (1997), and provides, in part, that "[t]he state is prohibited from requiring any new or expanded activities by local governments without full state financing," Const 1963, art 9, § 25. This prohibition is implemented through the POUM provision of § 29. Const 1963, art 9, § 25; *Durant*, 456 Mich at 183. Reading §§ 25 and 29 together, a new or expanded activity or service is fully financed by the state when the state pays the "necessary increased costs" resulting from compliance with the mandate. Const 1963, art 9, § 29; see also *Adair I*, 486 Mich at 479.

proof than required by *Adair I* and, therefore, that the special master erroneously directed a verdict in favor of the state.

Our Supreme Court granted leave in *Adair I*, in part, to determine "whether plaintiffs must introduce evidence of a specific, quantified increase in costs resulting from a violation of the Headlee Amendment provision prohibiting unfunded mandates to establish entitlement to a declaratory judgment" when the plaintiffs had alleged that the state had failed to appropriate any funding to reimburse the school districts for complying with the CEPI recordkeeping mandates. *Adair I*, 486 Mich at 472. The majority answered this question in the negative. According to the majority,

> to establish a violation of the POUM provision, a plaintiff must show that the state required a new activity or service or an increase in the level of activities or services. If no state appropriation was made to cover the increased burden on local government, the plaintiff need not show the amount of increased costs. It is then the state's burden to demonstrate that no state funding was required because the requirement did not actually increase costs or the increased costs were not necessary. [*Id.* at 480.]

The majority rejected the state's claim that it was the school districts' burden, and not its burden, to demonstrate that any additional costs incurred in order to comply with the recordkeeping mandates met the definition of "necessary cost" under MCL 21.233(6) and were not *de minimis* under MCL 21.232(4). The majority explained:

> Neither Const 1963, art 9, § 29 nor MCL 21.233 suggests that plaintiffs bear the burden of proving precisely how much the school districts' costs increased as a result of the mandate. In fact, the language of MCL 21.233 implies the opposite. That section defines "necessary cost" as the "net cost of an activity or service provided by a local unit of

government." The "net cost" is defined as "the actual cost
to the state if the state were to provide the activity or
service mandated as a state requirement . . . ." [*Adair I*,
486 Mich at 486-487.]

Likewise, the majority rejected the state's argument
that the school districts were required to produce
evidence of specific dollar-amount increases in the costs
incurred by the districts in order to comply with the
CEPI mandates. The majority indicated that the con-
clusion that "a plaintiff does not have the burden to
make such a showing to establish entitlement to a
declaratory judgment under the POUM provision . . . is
axiomatic from the language of Const 1963, art 9, § 29,
previous caselaw involving the Headlee Amendment,
and the underlying purpose for seeking a declaratory
judgment." *Adair I*, 486 Mich at 488. The majority
elaborated:

> The terms "net cost" and "actual cost" suggest a quan-
> tifiable dollar amount. However, nothing in MCL 21.233
> suggests that it was intended to change the burden of proof
> in Const 1963, art 9, § 29. The specific costs that would be
> incurred are defined by reference to what costs the state
> would incur if it had to pay for the increased costs itself.
> Thus, it is the Legislature's burden to demonstrate that
> those costs were not "necessary" under one or more of the
> exceptions in MCL 21.233(6)(a) to (d). Otherwise, the
> Legislature must determine what dollar amount is neces-
> sary, then appropriate that amount to the school districts.
>
> This is so because MCL 21.233(6) defines "net cost" as
> "the actual cost to the state" if the state were to provide the
> activity or service required. Clearly, the Legislature is in a
> position far superior to plaintiffs' to determine what the
> actual cost to itself would be if it performed the increased
> recordkeeping and reporting duties. Proofs on this point
> are easily accessible to the state because it could ascertain
> the costs it would incur if it provided the new activity. The
> dispositive issue is the cost to the state if it were to provide

the new or increased activity or service, not the cost incurred by the local governmental unit.

To impose such a requirement on plaintiffs would be illogical and inconsistent with the purposes of the POUM provision of the Headlee Amendment. We have noted that the POUM provision is intended to address future services and activities. Plaintiffs in this case filed suit fewer than two months after EO 2000-9 took effect. The parties stipulated at trial that plaintiff school districts were not required to begin complying with the order's recordkeeping requirements until two years later.

Therefore, had this case been resolved in a timely fashion, EO 2000-9 would not have required plaintiffs to demonstrate specific amounts of necessary costs incurred. Moreover, it would have been difficult for them to do so. . . .

Finally, plaintiffs in this case seek a declaratory judgment, not monetary damages. An action for a declaratory judgment is typically equitable in nature and subject to different rules than other causes of action. "The declaratory judgment rule was intended and has been liberally construed to provide a broad, flexible remedy with a view to making the courts more accessible to the people." We have also consistently held that "a court is not precluded from reaching issues before actual injuries or losses have occurred."

Defendants claim that a finding of necessary increased costs cannot be established without a comparison between the specific net costs before and after the required change in activities. For the reasons stated previously, we reject this argument. Had this action proceeded to a prompt resolution, plaintiffs could not have demonstrated such a side-by-side comparison of the "before and after" costs incurred to meet the recordkeeping requirements. It would be nonsensical to impose this additional evidentiary requirement on plaintiffs here when, in another case, it would be impossible for the plaintiffs to make such a showing. [*Adair I*, 486 Mich at 488-491 (citations omitted).]

The special master in this case concluded that plaintiffs bore the burden of showing the amount of the purported underfunding "[b]ecause the Legislature has funded the mandate in question[.]" He reached this conclusion in reliance on footnote 29, wherein the *Adair I* majority observed: "However, if the state did appropriate funds for the new or increased activity or service, the plaintiff would likely have a higher burden in order to show a POUM violation." *Adair I*, 486 Mich at 480 n 29. The special master reasoned:

> In the instant case, the Plaintiffs' Second Amended Complaint ("SAC") acknowledges that the Legislature appropriated funds to pay for the CEPI/Data Link Mandates. Consequently, the Plaintiffs have a "higher burden" which requires them to produce evidence of specific dollar-amount increases in the costs incurred in order to comply with the CEPI requirements. [*Adair I*, 486 Mich at 480 n 29, 488.] Such a ruling is consistent not only with *Adair I*, but with [*Adair v Michigan*, 470 Mich 105, 111, 119-120; 680 NW2d 386 (2004) (*Adair II*)].[2] The Plaintiffs' poignant argument that the general direction of *Adair I* mitigates requiring them to establish the insufficiency of the amount of appropriation overlooks the factual distinction between *Adair I* (no appropriation made) and this case (tens of millions of dollars of appropriations made). Furthermore, once the state establishes an appropriation, the Plaintiffs are equipped to attack whether the amount is sufficient and the extent of any such deficiency. In fact, the Plaintiff's [sic] expert's report does attack the methodology used by the state and concludes that the mandate was not fully funded. Unfortunately for their case, the Plaintiffs have failed to do anything else. Instead, they concede that they cannot establish a Specific Number. As such, the case is fatally flawed, and dismissal of the claim is warranted. Cf. *Adair I*, [486 Mich] at 480 n 29; *Id.* at 508 (Markman, J., dissenting).

---

[2] Although *Adair II* preceded *Adair I*, this opinion refers to them as indicated for the sake of consistency with the special master's references.

> To hold otherwise could subject the taxpayers, courts, and parties to a cycle of never ending lawsuits in which the Plaintiffs only seek to prove that appropriations do not amount to full funding, while depriving the courts [of] the ability to declare what a full level of funding would be. This undermines the entire purpose of the Headlee Amendment and the efficient administration of justice.

The special master correctly recognized that *Adair I* is factually distinguishable from the instant case. In *Adair I*, the Legislature failed to appropriate any funding to reimburse the school districts for the necessary increased costs associated with the CEPI recordkeeping mandates. In this case, plaintiffs readily concede that the state has appropriated funding. The special master also correctly recognized that the *Adair I* majority intimated that in circumstances where an appropriation had been made, as in this case, a plaintiff asserting a POUM violation "would likely have a higher burden in order to show a POUM violation" because "[u]nder those circumstances, the state would not have violated the POUM provision per se by failing to provide funding." *Id.* at 480 n 29.

We conclude that the special master relied too heavily on the distinguishing factual circumstances present in this case when determining the nature of plaintiffs' burden of proof. Although the *Adair I* majority qualified its ruling that a "plaintiff need not show the amount of increased costs" with the prefatory phrase "[i]f no state appropriation was made to cover the increased burden on local government," *id.* at 480, the majority based its ultimate ruling on legal and not factual grounds. Indeed, the *Adair I* majority expressly and broadly ruled that neither Const 1963, art 9, § 29 nor MCL 21.233 impose on a plaintiff the burden of proving "how much the school districts' costs increased as a result of the mandate" or the "specific-dollar amount increases in

the costs incurred in order to comply with the CEPI requirements." *Adair I*, 486 Mich at 486-487, 488; see also *id.* at 491, 494. This rule is based on the language of the POUM provision and the enacting statutes, not any specific set of factual circumstances, including whether the Legislature appropriated any funding. This rule remains a constant by which this Court is bound, regardless of whether the Legislature has appropriated any funding, unless our Supreme Court revisits the issue of burden of proof and issues a ruling overruling *Adair I. Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 563; 741 NW2d 549 (2007). The "higher burden" imposed on the school districts by the special master is contraindicated by the *Adair I* majority's ruling.

Because the *Adair I* majority did not address what burden a plaintiff may bear when challenging the adequacy of an existing appropriation under the POUM provision, we are now tasked with doing so. Generally, a plaintiff seeking a declaratory judgment bears the affirmative duty to prove the existence or nonexistence of a fact or facts alleged and in dispute concerning an issue raised between the parties; i.e., plaintiffs must plead and prove facts that "indicate an adverse interest necessitating the sharpening of the issues raised." *Shavers v Attorney General*, 402 Mich 554, 589; 267 NW2d 72 (1978). Consistently with this general rule, our Supreme Court has ruled that a plaintiff alleging a violation of the POUM provision "must show that 'the state-mandated local activity was originated without sufficient state funding after the Headlee Amendment was adopted or, if properly funded initially, that the mandated local role was increased by the state without state funding for the necessary increased costs.' " *Adair I*, 486 Mich at 479, quoting *Adair II*, 470 Mich at 111. This is because a new or expanded activity or service

can be said to be fully financed by the state for purposes
of the POUM provision only when the state pays the
"necessary increased costs" resulting from compliance
with the state's mandate. Const 1963, art 9, § 29; *Adair
I*, 486 Mich at 479. The *Adair I* majority clearly indi-
cated that "the Legislature is in a position far superior
to plaintiffs' to determine what the actual cost to itself
would be if it performed the increased recordkeeping
and reporting duties." *Id.* at 489. Indeed, the majority
opined that "[t]he dispositive issue is the cost to the
state if it were to provide the new or increased activity
or service, not the cost incurred by the local governmen-
tal unit." *Id.*

With these principles in mind, and considering the
*Adair I* majority's ruling that the POUM provision did
not place the burden on plaintiffs to show a quantified
dollar amount of any increase in necessary costs asso-
ciated with complying with a state mandate, we con-
clude that plaintiffs' "higher burden" must be some-
thing less than proving "how much the school districts'
costs increased as a result of the mandate" or of
"specific dollar-amount increases in the costs incurred
in order to comply with the CEPI requirements." *Adair
I*, 486 Mich at 486-487, 488. We also conclude that the
higher burden borne by plaintiffs is the burden to
present sufficient evidence to allow the trier of fact to
conclude that the method employed by the Legislature
to determine the amount of the appropriation was so
flawed that it failed to reflect the "actual cost to the
state if the state were to provide the activity or service
mandated as a state requirement . . . ." MCL 21.233(6).
We further conclude, after reviewing the report of
plaintiffs' cost accounting expert, that plaintiffs stood
ready to present some evidence that, if determined
credible by the trier of fact, would have undermined the
validity of the method used by the Legislature to

determine the amount of the appropriations at issue and that would have shifted the burden of going forward with evidence to the state to present some evidence that the appropriations do fully fund the state's obligation under the POUM provision. Accordingly, we remand this matter to the special master for the reopening of proofs and the finding of facts regarding plaintiffs' claim that the existing appropriations do not fully fund the necessary costs of the CEPI mandates.[3]

II

We agree with the special master, however, that the Legislature did not impose unfunded mandates upon the school districts in violation of the POUM provision, as a matter of law, when it enacted 2011 PA 100 through 2011 PA 103. None of these public acts imposes new or increased activities on the school districts within the meaning of the POUM provision and, therefore, the POUM provision is not implicated.

The Headlee Amendment requires the state to fund the necessary costs of new or increased activities or services mandated by the state, *Adair I*, 486 Mich at 478-479; *Adair II*, 470 Mich at 110, as reflected by the following language of the amendment:

A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the legislature or any state agency of units of Local Government, unless a state appropriation is made and disbursed to pay the unit of Local Government for any necessary increased costs. [Const 1963, art 9, § 29.]

[3] For these same reasons, we reject the state's claim that the special master erred when he failed to summarily dismiss the school districts' challenge to the adequacy of the appropriation earlier in the proceedings on the basis of the districts' inability to prove an actual quantified amount of underfunding.

Section 34 of the Headlee Amendment obligates the Legislature to implement §§ 25 through 33 of the Amendment. Const 1963, art 9, § 34; *Owczarek v Michigan*, 276 Mich App 602, 604; 742 NW2d 380 (2007). Pursuant to this grant of authority, the Legislature enacted 1979 PA 101, MCL 21.231 *et seq.*, which includes, inter alia, several definitions for terms used in the various sections of the Headlee Amendment. MCL 21.232; MCL 21.233; MCL 21.234; *Owczarek, supra.* Included in these provisions is the definition of the term "activity," which the Legislature has defined as "a specific and identifiable administrative action of a local unit of government." MCL 21.232(1). The next sentence clarifies that "[*t*]*he provision of a benefit for, or the protection of, public employees of a local unit of government is not an administrative action.*" *Id.* (emphasis added).

Plaintiffs assert that the four public acts at issue mandate new or increased activities or services within the meaning of the POUM provision. These public acts amend various provisions of the Revised School Code, the teacher tenure act, and PERA. Generally, among other activities, the amendments require the implementation of an annual employee evaluation system for teachers and certain school administrators, allow a tenured teacher to be demoted or discharged upon a showing that the reason for demotion or discharge is not "arbitrary and capricious," and add new subjects that may not be topics of collective bargaining between a public school employer and a bargaining representative of its employees. The special master rejected plaintiffs' position for the reason that "the Tenure Reforms involve benefits for employees and do not involve state mandated services or activities that require payment under the Headlee Amendment." The special master correctly determined that the public acts at issue do not

impose state-mandated activities within the meaning of MCL 21.232(1)[4] and the POUM provision.

Michigan jurisprudence has long recognized that the teacher tenure act protects public teachers from the arbitrary and capricious employment practices of school boards. *Tomiak v Hamtramck Sch Dist*, 426 Mich 678, 686-687; 397 NW2d 770 (1986); *Rehberg v Melvindale Bd of Ed, Ecorse Twp Sch Dist No 11*, 330 Mich 541, 548; 48 NW2d 142 (1951); *Goodwin v Kalamazoo Bd of Ed*, 82 Mich App 559, 573; 267 NW2d 142 (1978). Regardless of whether the challenged amendments to the tenure act reduce or increase the protections afforded to tenured teachers, the simple fact of the matter is that the public acts merely modify existing protections and, thus, still provide a level of protection to tenured public teachers against the arbitrary and capricious employment practices of administrators and school boards. Under such circumstances, the new requirements imposed by the amended tenure act do not constitute activities under MCL 21.232(1) and, hence, the POUM clause.

Similarly, the revisions made to the Revised School Code do not implicate the POUM provision. The mandated teacher and administrator evaluation processes impose standardized evaluation processes on the school districts, pursuant to which the effectiveness of teachers and administrators may be documented and rewarded. In addition, the processes provide a means by

---

[4] The Legislature defined the term "service" for purposes of § 29 as a "program of a local unit of government which is available to the general public or is provided for the citizens of the local unit of government." MCL 21.234(1). Because the evaluation and tenure processes are not available to or provided for the general public, these processes do not constitute a program, and MCL 21.234(1) is not implicated on the facts of this case. We decline to address the constitutionality of MCL 21.234(1) when the statute has no application.

which to identify ineffective teachers and administrators and to provide those employees so identified with plans designed to improve their effectiveness. Thus, much like the modifications to the tenure act, the revisions to the Revised School Code provide protections to public employees. The question is not whether the state mandate has some adverse fiscal consequence on the unit of local government, but instead, whether the mandate imposes new or increased activities within the meaning of the POUM provision. In this case, this question must be answered in the negative.

Plaintiffs assert, however, that the public employee benefit or protection exception found in the last sentence of MCL 21.232(1) is facially unconstitutional because the exception precludes the school districts from recovering from the state the necessary supervisory and administrative costs of complying with the new or increased activities mandated by the public acts. According to plaintiffs, this exception violates the intent of the voters who ratified the Headlee Amendment, because those voters did not intend any exceptions to an application of the POUM provision, as revealed by the clear and plain language of the provision, which sets forth no exceptions.

Plaintiffs correctly observe that "[t]he state may not avoid the clear requirements of art 9, § 29 either by specific statute or by implementation of definitions adverse to the mandate of the people." *Durant v State Bd of Ed*, 424 Mich 364, 392; 381 NW2d 662 (1985) (*Durant I*). The definitions found in MCL 21.232(1) and MCL 21.234(1) are not adverse to the mandate of the people, however. This Court has previously determined that MCL 21.232(1) and MCL 21.234(1) "are correct in their construction of the constitutional language" of § 29. *Detroit Mayor v Michigan*, 228 Mich App 386, 399

n 8; 579 NW2d 378 (1998), aff'd 459 Mich 291 (1998), mod 460 Mich 590 (1999). Also, in *Owczarek*, 276 Mich App at 611, this Court determined that the Legislature's codification of "an existing traditional remedy for the protection of a public employee whose termination or suspension under 2005 PA 130 is subsequently vacated" did not constitute an "activity" or "service" within the meaning of the POUM clause. This ruling establishes at least one circumstance under which an application of the benefit and protection exception is valid. *In re Request for Advisory Opinion*, 479 Mich 1, 11; 740 NW2d 444 (2007) (stating that a party challenging the facial constitutionality of a statute must establish that no circumstances exist under which it would be valid). Thus, plaintiffs' challenge to the constitutionality of MCL 21.232(1) fails.

Finally, the revision of PERA does not implicate the POUM provision. The addition of subjects that may not be topics of collective bargaining between a public school employer and a bargaining representative of its employees does not impose any state-mandated "activity" or "service." Rather, 2011 PA 103 merely removes any impediments to the implementation of the amendments to the teacher tenure act and the Revised School Code by preventing a public school employer and a bargaining representative of its employees from entering into a collective bargaining agreement, the terms of which would render null the new requirements imposed by the Legislature under the school code and the tenure act.

III

We also agree with the special master that our prior decisions in *Durant v Michigan (On Remand)*, 238 Mich App 185; 605 NW2d 66 (1999) (*Durant II*), and *Durant*

*v Michigan*, 251 Mich App 297; 650 NW2d 380 (2002) (*Durant III*) require us to reject plaintiffs' challenge to the constitutionality of the funding scheme employed by the Legislature to reimburse the school districts for the necessary increased costs they incurred in order to comply with the CEPI recordkeeping mandates.

The Legislature appropriates and disburses school funding through annual amendments to the State School Aid Act, MCL 388.1601 *et seq. Schmidt v Dep't of Ed*, 441 Mich 236, 244; 490 NW2d 584 (1992); *Durant II*, 238 Mich App at 194. The Legislature appropriates total annual school funding through MCL 388.1611, which is § 11 of each annual act. See 2010 PA 217, § 11; 2011 PA 62, § 11. From § 11(1), the Legislature then allocates to § 152a the funding to reimburse the school districts for compliance with the CEPI recordkeeping mandates, as required by *Adair I*. The Legislature allocated $25,624,500 from § 11 to § 152a for the 2010-2011 school year and $34,064,500 from § 11 to § 152a for the 2011-2012 school year. See § 152a of 2010 PA 217 and 2011 PA 62; MCL 388.1752a. Each allocation is accompanied by the restriction that the funds be "used solely for the purpose of paying necessary costs related to the state-mandated collection, maintenance and reporting of data to the state" as required by *Adair I*. See § 152a of 2010 PA 217 and 2011 PA 62. The funds for the 2010-2011 and 2011-2012 § 152a allocations were obtained by a reallocation of a portion of the annual per pupil foundation allowance through § 11d(1), 2010 PA 217, MCL 388.1611d(1).

Plaintiffs allege that these § 152a allocations violate Const 1963, art 9, §§ 25 and 29 because the allocations reduce the overall aid to local schools appropriated in § 11 of the State School Aid Act and thereby shift the tax burden for the necessary costs of the recordkeeping

mandates to local schools by allowing the state to use general operating revenue of the school districts to pay for those mandates. Plaintiffs further allege that these § 152a allocations violate Proposal A because the allocations reduce the general per pupil foundation allowance allocation, which is constitutionally guaranteed to be provided to each school district solely for the school operating purposes of each district, by reallocating these otherwise guaranteed funds to a separate categorical funding allocation for the CEPI mandates. According to plaintiffs, because the § 152a allocations were unconstitutionally funded, the Legislature actually provided no funding to reimburse the school districts for the necessary cost of complying with the recordkeeping mandates.

In *Durant III*, 251 Mich App at 304-310, this Court ruled that the Legislature may allocate that portion of the per pupil Proposal A foundation allowance over and above the base level required by Proposal A to satisfy the state's funding obligations under the Headlee Amendment. Likewise, in *Durant II*, 238 Mich App at 206-209, this Court ruled that § 29 of the Headlee Amendment did not preclude use of the foundation allowance to fund the state's Headlee obligations. This panel is bound under the rule of stare decisis to honor the precedential effect of *Durant II* and *Durant III*. MCR 7.215(C)(2). Consequently, like the special master, we reject plaintiffs' challenge to the constitutionality of the funding scheme employed in 2010 PA 217 and 2011 PA 62 in reliance on *Durant II* and *Durant III*.

IV

We also reject, as did the special master, the state's claim that plaintiffs' action is barred by an application of the doctrine of res judicata.

The rules governing the application of the doctrine of res judicata were cogently summarized in *Adair II*, 470 Mich at 121, as follows:

> The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first instance. *Sewell v Clean Cut Mgt, Inc*, 463 Mich 569, 575; 621 NW2d 222 (2001). This Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999).

" 'Whether a factual grouping constitutes a "transaction" for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, [and] whether they form a convenient trial unit . . . .' " *Adair II*, 470 Mich at 125, quoting 46 Am Jur 2d, Judgments § 533, p 801.

Plaintiffs' challenge to the constitutionality of the teacher and administrator evaluation requirements is not barred by res judicata. The Legislature initially enacted these evaluation requirements in 2009 PA 205, which became effective on January 4, 2010, a decade after the passage of the legislation that is the subject of *Adair I*, 18 months after this Court issued the declaratory judgment in favor of the *Adair I* plaintiffs on July 3, 2008, *Adair v Michigan (On Second Remand)*, 279 Mich App 507; 760 NW2d 554 (2008), aff'd in part and rev'd in part 486 Mich 468 (2010), and just six months before our Supreme Court affirmed the entry of the declaratory judgment in *Adair I*. Under these circum-

stances, plaintiffs' claims relating to the teacher and administrator evaluation mandates do not "form a convenient trial unit" with the claims raised by the plaintiffs in *Adair I* because the latter claims were all resolved by the time any constitutional claims relating to 2009 PA 205 accrued and, thus, the claims do not arise from the same transactional setting as the Headlee challenge litigated in *Adair I*. See *Mich Adventure, Inc v Dalton Twp*, 290 Mich App 328, 333; 802 NW2d 353 (2010) (stating that a final judgment is a court's last action that settles the rights of the parties and disposes of all issues in controversy, except for an award of costs and sometimes attorney fees). A res judicata defense is unavailable to the state on these facts.

Likewise, plaintiffs' claim that the Legislature failed to fully fund the necessary costs of the recordkeeping mandates is not barred by an application of res judicata. As previously observed, plaintiffs allege the amounts appropriated by the Legislature in § 152a of 2010 PA 217 and in § 152a of 2011 PA 62 are insufficient to fully reimburse the school districts for the necessary costs of the recordkeeping mandates, that § 152a violates the POUM provision for this reason, and that § 152a violates § 25 of the Headlee Amendment by reducing the proportion of state aid to local schools and shifting the tax burden for that reduced aid to local taxpayers. 2010 PA 217 became effective on December 3, 2010, almost five months after our Supreme Court's decision in *Adair I* issued. 2011 PA 62 became effective on June 21, 2011, almost one year after our Supreme Court's decision in *Adair I* issued. Consequently, any cause of action for underfunding associated with these public acts arose well after the resolution of the claims that were the subject of the *Adair I* litigation. The instant claims are not related to the claims in *Adair I* in time, space, and origin. Moreover, a challenge predicated on a claim

that a mandated activity or service is not fully funded as required by the POUM provision, which is asserted after a judicial determination that the challenged activities or services are state mandates for purposes of the Headlee Amendment, is generally brought as a new action. See, e.g., *Durant III*, 251 Mich App 297.

V

Finally, the state argues as a defense that the $3 billion-plus appropriation of discretionary funds found in § 22 of both 2010 PA 217 and 2011 PA 62 satisfies the state's obligation under the POUM provision for the 2010-2011 and 2011-2012 school years. The special master rejected this argument, as do we. The state's argument was expressly rejected in *Adair (On Second Remand)*, 279 Mich App at 521-525. Our ruling remains unaltered by the Supreme Court. Thus, we are bound by our prior decision. MCR 7.215(C)(2).

VI

A declaratory judgment is granted, in part, to the state consistent with this opinion. We remand this matter to the special master to reopen proofs and to make factual findings regarding plaintiffs' claim that the existing appropriations do not fully fund the necessary costs of the CEPI mandates. We retain jurisdiction.

O'CONNELL, P.J., and TALBOT and OWENS, JJ., concurred.