# STATE OF MICHIGAN

# COURT OF APPEALS

DANIEL ADAIR, et al.,

        Plaintiffs,

v

MICHIGAN DEPARTMENT OF EDUCATION,
BUDGET DIRECTOR FOR THE STATE OF
MICHIGAN, TREASURER FOR THE STATE
OF MICHIGAN and SUPERINTENDENT OF
PUBLIC INSTRUCTION FOR THE STATE OF
MICHIGAN,

        Defendants.

FOR PUBLICATION
September 20, 2016
9:15 a.m.

No. 311779
LC No. 15-146364-PZ

Before: SAAD, P.J., and MURRAY and GADOLA, JJ.

PER CURIAM.

Plaintiffs[1] bring this original taxpayer action to enforce §§ 25 and 29 of the Headlee Amendment, Const 1963, art 9, §§ 25-34. Plaintiffs allege that the Legislature violated the Amendment by failing to appropriate sufficient funds to reimburse the school districts of this state for the necessary costs associated with the districts' compliance with the recordkeeping requirements of the Center of Educational Performance and Information (CEPI). According to plaintiffs, the legislative appropriations for the 2012-2013, 2013-2014, and 2014-2015 school years are tens of millions of dollars less than is needed to satisfy the state's funding obligation under the Amendment. Plaintiffs also challenge the method by which the Legislature funded these appropriations. Plaintiffs characterize that funding scheme as an unconstitutional shell game. Finally, plaintiffs allege that the Legislature violated the Amendment by imposing a new or an increased level of activities on the school districts through amendments of certain provisions of the Revised School Code, MCL 380.1 *et seq.*, and the Teachers' Tenure Act, MCL 38.71 *et seq.*, without appropriating any funding to reimburse the school districts for the necessary costs associated with the new mandates. Defendants move for summary disposition with regard to plaintiffs' underfunding claim. Plaintiffs request a declaratory judgment in their favor with regard to their remaining claims. We grant summary disposition in favor of

---

[1] The 930 plaintiffs in this case are 465 Michigan public school districts and a representative taxpayer from each district.

-1-

defendants with regard to plaintiffs' underfunding claim. The doctrine of res judicata bars our consideration of the merits of plaintiffs' underfunding claim. Plaintiffs' remaining claims were authoritatively rejected in *Adair v Michigan*, 302 Mich App 305; 839 NW2d 681 (2013), rev'd in part on other grounds 489 Mich 89 (2014), and, thus, the doctrine of stare decisis bars reconsideration of the merits of those claims. Plaintiffs' complaint is dismissed in its entirety with prejudice.

## I

This action focuses, in part, on the application of the second sentence of the Amendment, which is commonly referred to as the "prohibition on unfunded mandates" or POUM provision. As a result of prior litigation brought in this Court by plaintiffs, our Supreme Court held that the state violated the POUM provision when it required plaintiff school districts to collect, maintain and report to the CEPI certain types of data for use by the state, without providing funds to reimburse the schools districts for the necessary costs incurred by the districts in order to comply with the new mandates. *Adair v Michigan*, 486 Mich 468, 494; 785 NW2d 119 (2010) (*Adair I*). Thereafter, our Legislature appropriated $25,624,500 for the 2010-2011 school year "to be used solely for the purpose of paying necessary costs related to the state-mandated collection, maintenance, and reporting of data to this state." 2010 PA 217, § 152a. The Legislature increased the appropriation to $34,064,500 for the 2011-2012 school year. This latter appropriation included an allocation of $8,440,000 to reimburse the school districts for the costs of complying with a new CEPI reporting requirement.

Plaintiffs then commenced their second CEPI-related suit in this Court under the Headlee Amendment (*Adair II*). They alleged that the Legislature failed to appropriate sufficient funding to cover the CEPI mandates for the 2010-2011 and 2011-2012 school years; that, to the extent that 2010 PA 217 otherwise reduced the overall discretionary state aid funds by reallocation of a portion of those discretionary funds to § 152a, the act violated Const 1963, art 9, §§ 25 and 29 by shifting the tax burden to local taxpayers; that the Legislature violated the POUM provision by mandating a new teacher/administrator evaluation process without providing any funding to implement the mandate; and that the Legislature failed to appropriate sufficient funding to fully fund the new Teacher Student Data Link portion of the CEPI system. This Court referred the matter to a special master.

The special master granted partial summary disposition in favor of defendants with regard to plaintiffs' challenge to the method by which the Legislature chose to fund the CEPI-related appropriations. He opined that he was required to do so because this Court had "definitively rejected" the arguments advanced by plaintiffs in *Durant v Michigan*, 251 Mich App 297; 650 NW2d 380 (2002), and *Durant v Michigan (On Remand)*, 238 Mich App 185; 605 NW2d 66 (1999). In subsequent proceedings, the special master granted partial summary disposition in favor of defendants on the ground that the newly mandated teacher/administrator evaluation process involved the provision of a benefit for employees and, thus, pursuant to MCL 21.232(1), the evaluation process was not a state-mandated service or activity for purposes of the Headlee Amendment. Finally, during a trial on the merits of plaintiffs' remaining POUM claims, the special master granted defendants' motion for involuntary dismissal after plaintiffs' lead counsel indicated during his opening statement that plaintiffs would not attempt to prove a specific dollar amount of underfunding, but instead would limit proofs to expert testimony that

would show that the Legislature's methodology to determine the requisite amount of funding was materially flawed.

This Court vacated the special master's grant of involuntary dismissal and remanded the matter to the master for the taking of proofs. This Court otherwise affirmed the rulings of the special master. *Adair*, 302 Mich App at 305. Our Supreme Court reversed this Court, in part, and reinstated the special master's grant of involuntary dismissal. In so doing, however, the Supreme Court noted in its opinion that "[w]e do not disturb the balance of the Court of Appeals' holdings not addressed in this opinion." *Adair v Michigan*, 497 Mich 89, 111 n 54; 860 NW2d 93 (2014).

In the meantime, plaintiffs commenced the instant suit (*Adair III*). We referred plaintiffs' underfunding claim to a special master for the taking of proofs and the reporting of proposed factual findings for this Court's review. We reserved the remaining legal questions for our resolution at the conclusion of the proceedings before the special master.

Thereafter, proceedings commenced before the special master, and defendants moved for summary disposition on three grounds. First, defendants sought summary disposition pursuant to MCR 2.116(C)(7) on the ground that the doctrine of res judicata or the doctrine of collateral estoppel or both doctrines barred plaintiffs from relitigating the adequacy of the roughly $34 million appropriation to fund the CEPI recordkeeping requirements unsuccessfully challenged in *Adair II*. Second, defendants sought summary disposition pursuant to MCR 2.116(C)(8) on the ground that plaintiffs' revised first amended complaint failed to state a claim for a violation of the POUM provision consistent with the special pleading requirements of MCR 2.112(M) where plaintiffs failed to allege any new activity or service imposed by the state on the school districts since the school years at issue in *Adair II* or that the Legislature had decreased the level of funding for the same activities and services at issue in *Adair II*. Third and finally, defendants sought summary disposition pursuant to MCR 2.116(C)(10) on the ground that plaintiffs had not alleged and could not prove the existence of any new unfunded or underfunded mandate.

The special master issued his report on March 31, 2016, in which he recommended that defendants' motion for summary disposition be granted. The special master began his analysis with the acknowledgment that, in *Adair v Michigan*, 470 Mich 105, 120-126; 680 NW2d 386 (2004), our Supreme Court ruled that the doctrine of res judicata applies in actions to enforce the Headlee Amendment to bar the relitigation of similar issues by similar parties. He also acknowledged that the doctrine of res judicata bars a subsequent action when (1) the prior action was decided on the merits, (2) both actions involved the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. The special master then found that all three of these elements had been satisfied on the instant record and, therefore, that the doctrine of res judicata barred further consideration of the underfunding claims. He also found that the doctrine of collateral estoppel barred consideration of these claims.

The matter now returns for our determination of whether defendants are entitled to summary disposition with regard to plaintiffs' underfunding claim. We also must determine whether plaintiffs are entitled to the entry of a declaratory judgment in their favor with regard to their remaining claims.

## II

A motion for summary disposition brought pursuant to MCR 2.116(C)(7) requires this Court to accept as true the well-pleaded allegations of plaintiffs and to construe those allegations in favor of plaintiffs, unless the allegations are specifically contradicted by the affidavits or other appropriate documentation submitted by the movant. *Adair v Michigan*, 250 Mich App 691, 702; 651 NW2d 393 (2002), aff'd in part and rev'd in part on other grounds 470 Mich 105 (2004). "If the pleadings demonstrate that a party is entitled to judgment as a matter of law, or if the affidavits or other documentary evidence show that there are no genuine issues of fact, judgment must be rendered without delay." *Id*.

A motion for summary disposition brought pursuant to MCR 2.116(C)(10) requires this Court to review the pleadings, affidavits and other documentary evidence submitted, make all reasonable inferences therefrom, and determine whether a genuine issue of material fact exists, giving the nonmoving party the benefit of reasonable doubt. *Id*.

## III

We agree with the special master that the doctrine of res judicata bars our further consideration of the merits of plaintiffs' underfunding claim.[2]

"The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action." *Adair*, 470 Mich at 121. The doctrine bars a second, subsequent action when the following three elements are met: "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id*. The doctrine "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id*.

---

[2] We reject plaintiffs' assertion that the doctrine of res judicata should have no application in matters involving the enforcement of the Headlee Amendment. Plaintiffs are correct that the common law prevails except as abrogated by the constitution, by the Legislature, or by our Supreme Court. *People v Stevenson*, 416 Mich 383, 389; 331 NW2d 143 (1982); *People v McKendrick*, 188 Mich App 128, 138; 468 NW2d 903 (1991). They are misguided, however, in their belief that an application of the doctrine of res judicata in this present case contravenes the constitutional scheme created within the Headlee Amendment. Our Supreme Court authoritatively rejected plaintiffs' position in *Adair v Michigan*, 470 Mich 105; 680 NW2d 386 (2004). The Court definitively ruled that the ratifiers of the Headlee Amendment "would have thought, as with all litigation, there would be the traditional rules that would preclude relitigation of similar issues by similar parties" and that an application of the doctrine was essential to making the Amendment "workable," and to preventing the Amendment from becoming a "Frankensteinian monster." *Id*. at 120-121, 126-127. Thus, we "must . . . consider res judicata and apply it to this unique Headlee situation." *Id*. at 121. We are "bound by the rule of stare decisis to follow the decisions of our Supreme Court." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 447; 761 NW2d 429 (2008).

With regard to the first element, defendants correctly characterize the *Adair II* litigation as concluding in an involuntary dismissal under MCR 2.504(B)(2). *Adair*, 497 Mich at 99 & n 18, 110. An involuntary dismissal pursuant to MCR 2.504 operates as an adjudication on the merits. MCR 2.504(B)(3); *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 419; 733 NW2d 755 (2007). Thus, in the absence of any language in the order of dismissal limiting the scope of the merits decided, and our review of the order discloses no such language of limitation, "the order operates as an adjudication of the entire merits of a plaintiff's claim." *Washington*, 478 Mich at 419. The fact that our Supreme Court expressly declined to remand the case for further proceedings reinforces our conclusion that the decision was one on the merits. *Adair*, 497 Mich at 110. The first element of the doctrine is satisfied.

With regard to the second element and Headlee actions, the *Adair* Court offered the following guidance:

> In litigation concerning the . . . POUM provision[] of the Headlee Amendment, Const 1963, art 9, § 29, where a taxpayer or a local unit of government is suing the state, the issue is whether the Legislature's act is unconstitutional as it applies not just to a single local unit of government, but to all local units affected by the legislation. In such cases, the interests of all similar local units of government and taxpayers will almost always be identical. If the relief sought by one plaintiff to remedy a challenged action is indistinguishable from that sought by another, such as when declaratory relief is sought concerning an act of the Legislature establishing the proportion of state funding for local government units, the interests are identical. [*Adair*, 470 Mich at 122.]

In the present case, the special master found that the parties in the *Adair II* litigation were identical to the parties in the present litigation with the exception that four of the parties in the *Adair II* litigation had not joined the *Adair III* suit. Neither party challenges this finding. The special master also found that this element was satisfied. Again, neither party challenges this finding. There is no question that the parties in the present litigation are the same or in privity with the parties in *Adair II* for purposes of a declaratory judgment action brought to enforce the POUM provision of § 29. *Adair*, 470 Mich at 121-123. Hence, the second prong is satisfied.

With regard to the third element, the determinative question is whether the matter in this case was or could have been resolved in *Adair II*. *Adair*, 470 Mich at 121. "[T]his Court uses a transactional test to determine if the matter could have been resolved in the first case." *Washington*, 478 Mich at 420. "The transactional test provides that the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." *Adair*, 470 Mich at 124 (quotation marks and citation omitted); see also *Washington*, 478 Mich at 420. " 'Whether a factual grouping constitutes a "transaction" for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, [and] whether they form a convenient trial unit . . . .' " *Adair*, 470 Mich at 125, quoting 46 Am Jur 2d, Judgments, § 533, p 801 (emphasis omitted).

We find that the third element is satisfied. Plaintiffs' initial complaint in this case reasserted the same causes of action as advanced in the *Adair II* complaint. In *Adair II*, plaintiffs

-5-

challenged the adequacy of the amount of the appropriations in the 2010-2011 and 2011-2012 school years to compensate the school districts for the necessary costs incurred through compliance with the CEPI requirements. *Adair*, 497 Mich at 98; *Adair*, 302 Mich App at 308. In the present case, plaintiffs challenge the adequacy of the appropriations for the 2012-2013, 2013-2014, and 2014-2015 school years. The goal of a POUM claim brought pursuant to § 29 of the Amendment is to provide the Legislature with "a judicially determined amount that it must appropriate in order to comply with Headlee," *Adair*, 497 Mich at 109, such that "the state will be aware of the financial adjustment necessary for future compliance," *id*. (quotation marks and citation omitted). This goal is to be accomplished by requiring the plaintiff to establish the precise costs of the mandated service or activity and to identify the amount of the funding shortfall. *Id.* These prior rulings in *Adair I* and *Adair II* support the conclusion that one of the goals of the *Adair II* suit, in which plaintiffs asserted their first challenge under the POUM provision to a specific amount of funding appropriated to reimburse the districts for the costs associated with the recordkeeping activities of the CEPI, necessarily was to establish a base level of funding that would guide the Legislature with regard to future compliance with the state's funding obligation under the POUM provision. *Adair II* set that base rate of funding at $34,000,000 as a consequence of plaintiffs' inability or unwillingness to present appropriate proofs and the entry of an involuntary dismissal. This is because the involuntary dismissal served as a decision on the entire merits of the suit, including an adverse resolution of plaintiffs' claim that the $34,000,000 appropriation by the Legislature was inadequate to fully satisfy the state's funding obligation under the POUM provision.

A review of plaintiffs' revised first amended complaint in this suit reveals that plaintiffs are once again attempting to litigate the base funding rate and to reset that base rate at a figure significantly greater than the current figure. In other words, plaintiffs are attempting to employ *Adair III* to revisit and relitigate a dispositive issue raised in and resolved adversely to plaintiffs in *Adair II*. Because the issue of what constituted the appropriate base level of funding was necessarily raised and resolved in *Adair II*, and because plaintiffs now seek to relitigate the same issue in order to obtain a more favorable outcome, the third element of the doctrine is satisfied. *Adair*, 470 Mich at 121.

In light of the foregoing, the doctrine of res judicata bars further consideration of plaintiffs' claims of underfunding unless those claims are predicated on an alleged new violation of the POUM provision by the state, i.e., that the state imposed a new mandate through the CEPI that requires plaintiff school districts to engage in new activities or services or to increase the level of activities or services currently being provided. A review of plaintiffs' revised first amended complaint reveals no such allegations. Consequently, the special master correctly opined that defendants are entitled to the summary dismissal of plaintiffs underfunding claim. We grant summary disposition to defendants pursuant to MCR 2.116(C)(7) and MCR 2.116(C)(10).

In doing so, we reject plaintiffs' argument that an application of the doctrine of res judicata in this case would violate the Headlee Amendment by writing out of the POUM provision the language establishing 1978 as the base year "from which the State's funding responsibility must be measured." We do so for two reasons. First, our Supreme Court has made it clear that one of the purposes of a suit to enforce the POUM provision is to establish a base level of funding that would guide the Legislature with regard to future compliance with the

state's funding obligation under the POUM provision. *Adair*, 497 Mich at 109; *Adair*, 470 Mich at 120. Second, the POUM provision "requires the state to fund any additional necessary costs of newly mandated activities or services and increases in the level of such activities and services from the 1978 base year." *Judicial Attorneys Ass'n v Michigan*, 460 Mich 590, 595; 597 NW2d 113 (1999). The 1978 base year serves as the measure by which a court is to determine whether a newly enacted state mandate imposes on a local unit of government an obligation to engage in new activities or to provide new services or an increase in the amount of activities already engaged in or services provided by the local unit of government. In other words, the 1978 base year is the measure by which a court determines whether a newly enacted mandate triggers a corresponding funding obligation under the POUM provision. The 1978 base year has nothing to do with the calculation of the actual amount of the funding obligation. The state's funding obligation for newly mandated activities or services will be based necessarily on the costs incurred in the first year the activities or services are provided. The state's funding obligation for a mandated increase in the activities engaged in or services provided will be based on calculating the difference between the pre-mandate and post-mandate costs incurred by the local unit of government in the first year the mandated activities or services are undertaken. An application of res judicata in the instant case will not preclude a court in a future suit from using the 1978 base year to determine whether a newly enacted state mandate requires a local unit of government to engage in new activities or services or to increase the level of activities or services previously provided. Because plaintiffs have not alleged in the current litigation that the state imposed a new mandate through the CEPI that requires plaintiff school districts to engage in new activities or services or to increase the level of activities or services currently being provided, the 1978 base year is irrelevant to any resolution of the issues raised in *Adair III*.

## IV

Finally, we decline plaintiffs' request for a declaratory judgment in their favor with regard to their remaining claims. In *Adair II*, this Court rejected plaintiffs' challenge to the constitutionality of the funding scheme employed by the Legislature to reimburse the school districts for the necessary costs they incurred in order to comply with the recordkeeping mandates. *Adair*, 302 Mich App at 321-323. This Court also found that the amendments creating a teacher and administrator review process did not implicate the POUM provision because the amendments did not impose state-mandated activities within the meaning of MCL 21.232(1) and the POUM provision. *Id.* at 317-321. Moreover, this Court determined that the definition of the term "activity" found in MCL 21.232(1) was constitutional. *Id.* at 320-321. This Court declined to address the constitutionality of the definition of the term "service" found in MCL 21.234(1), however, because the teacher evaluation and tenure processes are not programs for purposes of MCL 21.234(1) and, hence, MCL 21.234(1) had no application in *Adair II*. *Id.* at 319 n 4. Nevertheless, this Court did acknowledge that this Court had previously found MCL 21.234(1) to be correct in its construction of the constitutional language. *Id.*. at 320. We are bound under the rule of stare decisis to honor the precedential effect of this Court's decision in *Adair II*, with regard to these rulings, as conceded by plaintiffs. MCR 7.215(C)(2); *Catalina Marketing Sales Corp v Dep't of Treasury*, 470 Mich 13, 23; 678 NW2d 619 (2004). Accordingly, we dismiss plaintiffs' remaining claims.

Plaintiffs' complaint is dismissed with prejudice.

/s/ Henry William Saad
/s/ Christopher M. Murray
/s/ Michael F. Gadola